# TOLMAN *v.* TOLMAN.

SUPREME COURT DIST. OF COL., JURISDICTION OF; EQUITY;
ALIMONY; SUITS BY NON-RESIDENTS; EQUITY
PLEADING AND PRACTICE.

1. The Supreme Court of this District, holding an equity term, has jurisdiction to grant alimony as a permanent relief, grounded upon causes other than those upon which a divorce *a mensa et thoro* could have been decreed by the ecclesiastical courts of England.
2. In the exercise of its general powers, a court of equity has power to decree alimony as independent substantive relief.
3. Where a bill for permanent alimony makes out a *prima facie* case, the complainant is entitled to an allowance *pendente lite* for support and counsel fees, the amount of which is within the sound judicial discretion of the trial court.
4. A suit for alimony alone, as distinct from divorce, is maintainable in this District by a non-resident wife against her resident husband.
5. Where the answer to a bill filed for alimony contains matter tending to degrade the character of the complainant by referring to improper relations alleged to have existed between the complainant and the defendant before their marriage, the trial court is justified in striking out such matter, on motion of the complainant, as irrelevant and scandalous.

No. 82. Submitted September 27, 1893.—Decided November 6, 1893.

HEARING on appeal by the defendant from an order of the Supreme Court of the District of Columbia, holding an equity term, allowing alimony *pendente lite* and counsel fees, in a suit for permanent alimony; and from an order in the same cause sustaining exceptions taken by the complainant to certain portions of the defendant's answer, as scandalous and irrelevant. *Affirmed.*

THE COURT in its opinion stated the case as follows:

This is an application by a non-resident wife for a decree for alimony against her husband, residing in this District. The wife, Eva F. Tolman, resides in Boston, Mass., and she alleges that she was married to the defendant, George R. Tolman, in the city of Boston in October, 1888, and that from the date of such marriage to the 22d of June, 1889,

she lived and cohabited with her husband in said city; the parties treating each other in all respects as husband and wife; that of the marriage one child was born, but died within a few days after its birth; that the defendant left the plaintiff in the city of Boston about the 22d of June, 1889, where she has ever since resided, earning her living as best as she could as a child's dressmaker; that during a portion of the time since she was deserted by her husband, she has been in ill-health, unable to work, and during such time she has had to depend upon her aunt for means of support; that she has no means of her own whatever. She alleges that her husband remitted to her money at the rate of $2.50 per week until March, 1890, when he wrote to her from Washington city that he would send her no more money unless she would apply for and get a divorce from him; that in June, 1890, he sent her $5, since which time he has contributed nothing to her support.

The bill alleges that the defendant is an employee of the United States Government, in the Life Saving Service at Washington, D. C., at an annual salary of $1,800, payable in monthly instalments, besides which he is an architect and an artist, from which profession he derives additional income.

The bill prays for a decree requiring the defendant to pay to the plaintiff reasonable alimony, so long as he shall refuse or neglect to live with her and provide her a home and maintenance, and also for alimony *pendente lite*, and an allowance to pay counsel fees.

The defendant answered the bill, and by the answer he admits the fact of marriage as alleged, though he insists that it was a matter of mere formality to gratify the plaintiff; he also admits that he lived and cohabited with the plaintiff for a time after the marriage; that there was a child born after the marriage; but he denies the paternity of such child, though he admits that he attended the mother in confinement and remained with her for some time, and paid the expenses attending the same. He also admits that he deserted his wife, and that he has lived separate and apart from her,

leaving her to struggle for a subsistence as best she could, though he was and has been in the receipt of a salary from the government that was and is amply sufficient to support himself and his wife.

The court below passed an order for alimony *pendente lite,* and for an allowance for counsel fees; from which order an appeal was taken. And upon exceptions to certain parts of the answer of the defendant, as being scandalous and irrelevant, the court sustained the exception, and from that order the defendant has also appealed.

*Mr. Henry E. Davis* and *Mr. James C. Bushby* for the appellant:

1. The allowance of alimony, whether permanent or *pendente lite,* is not a matter of course. *Hallerman* v. *Hallerman,* 1 Barb., 64; *Solomon* v. *Solomon,* 28 How. Pr., 218; neither a matter of right, *McDonough* v. *McDonough,* 26 How. Pr., 198; nor a mere matter of judicial discretion. Whether alimony shall be granted seems to be matter of law; how much shall be granted a matter of discretion. Stewart, M. & D., § 379; *Collins* v. *Collins,* 80 N. Y., 12; *Bissell* v. *Bissell,* 1 Barb., 430. The matter of law is to be determined and the discretion to be exercised according to *all* the circumstances of each case. Stewart, M. & D., §§ 375, 388; 1 Am. & Eng. Encyc., p. 476, and cases cited; *Smith* v. *Smith,* 2 Philli, 235; *Glenn* v. *Hill,* 50 Ga., 95; *Prince* v. *Prince,* 1 Rich. Eq., 291; *Dickens* v. *Dickens,* 38 Ga., 663; *Walling* v. *Walling,* 16 N. J. Eq., 389; *Rossman* v. *Rossman,* 62 Mich., 429; *Dixon* v. *Hurrell,* 8 C. & P., 717; *Carpenter* v. *Carpenter,* 19 How. Pr., 539; *Foote* v. *Foote,* 22 Ill., 425; *Joliff* v. *Joliff,* 32 Ill., 527; *Wheeler* v. *Wheeler,* 18 Ill. App., 330; *Jones* v. *Jones,* 2 Barb. Ch., 146; *Worden* v. *Worden,* 3 Edw. Ch., 408; *Bergen* v. *Bergen,* 22 Ill., 187; *Cummings* v. *Cummings,* 50 Mich., 305; *Hallerman* v. *Hallerman,* supra; *McDonough* v. *McDonough,* supra; *Burr* v. *Burr,* 7 Hill (N. Y.), 207; *Rees* v. *Rees,* 3 Philli., 387; 2 Bishop, M. & D., §445. The expunged portions of the answer are ma-

terial and important, showing that the appellee, prior to the marriage, relinquished all right to exact support from the appellant, and that the circumstances attending the separation were of a character that divests the appellee of any and all right to alimony.

1. Alimony *pendente lite* should not have been granted, because the bill does not exhibit a *prima facie* case for permanent alimony. *Verner* v. *Verner*, 62 Miss., 263; *Porter* v. *Porter*, 41 Miss., 117; Stew., M. & D., §386. In other words, it must appear on the face of the bill that it is well founded. *Dougherty* v. *Dougherty*, 8 N. J. Eq., 540; *Bissell* v. *Bissell*, 1 Barb., 430. Furthermore, ultimate success must be apparent. *Snyder* v. *Snyder*, 3 Barb., 621; *Jones* v. *Jones*, 2 Barb. Ch., 150; *Carpenter* v. *Carpenter*, 19 How. Pr., 539. The bill does not allege the necessity for *immediate* allowance; there is no allegation of *present* want, without which an allowance of alimony *pendente lite* cannot be made properly. *Coles* v. *Coles*, 2 Md. Ch., 341; *Verner* v. *Verner*, 62 Miss., 263; *Converse* v. *Converse*, 9 Rich. Eq., 535-570; *Holt* v. *Holt*, L. R., 1 P. & D., 610. See also, 1 Am. & Eng. Encyc., 473 and cases cited; *Collins* v. *Collins*, 80 N. Y., 12; *Rawson* v. *Rawson*, 37 Ill. App., 495; Stew., M. & D., §372, and cases cited; *Ludlow* v. *Wilmot*, 2 Stark., 86; 2 Bish., M. & D., §446. If the wife can support herself, and has supported herself, alimony *pendente lite* will not be granted. Appellee's bill does not allege present incapacity. Stewart, M. & D., §371; Id., §§179, 372, and cases cited; *Thompson* v. *Thompson*, L. R., 1 P. & D., 555; *Coles* v. *Coles*, 2 Md. Ch., 341; *George* v. *George*, L. R., 1 P. & D., 555; 2 Bish., M. & D., §456; *Prince* v. *Prince*, 1 Rich. Eq., 291; *Washburn* v. *Washburn*, 9 Cal., 475; *Foss* v. *Foss*, 2 Ill. App., 411.

3. Alimony *pendente lite* should not have been allowed because the court had no jurisdiction over the subject matter of the suit. *Joslyn* v. *Joslyn*, 15 Wash. L. R., 692; *Pelz* v. *Pelz*, Sup. Ct., D. C., Eq. No. 8306 (not reported). The jurisdiction of the District depends largely upon the jurisdic-

tion of Maryland at the time of the cession. *Barber* v. *Barber*, 21 How., 582. Under the act of Md. of 1777, alimony was granted to the wife whenever the English courts would be authorized to grant a divorce *a mensa et thoro.* But in England alimony has no independent existence, not even the ecclesiastical courts being authorized to grant it when it is the only relief sought. 1 Am. & Eng. Encyc., p. 469. A separate suit for alimony unconnected with an application for divorce or for restitution of conjugal rights, was never entertained. *Hair* v. *Hair*, 10 Rich. Eq., 172 ; *Trotter* v. *Trotter*, 77 Ill., 511 ; *McGee* v. *McGee*, 10 Ga., 482 : *Trevino* v. *Trevino*, 63 Tex., 650. Against the preponderance of authority are a few *dicta* by the Maryland courts, chief among which is the case of *Jamison* v. *Jamison*, 4 Md. Ch., 296. In that case the chancellor *volunteered* the opinion that the jurisdiction in suits for alimony was not restricted to causes which would entitle the party applying for alimony to a divorce according to the ecclesiastical law of England. He admits that his conclusion is not fortified by any direct Maryland decision upon the point. *Crane* v. *Meginnis*, 1 G. & J., 463 ; *Helms* v. *Franciscus*, 2 Bl., 565 ; *Dunnock* v. *Dunnock*, 3 Md. Ch., 143, are Maryland decisions affirming the English rule. The opinion in the Jamison case proceeded upon the false premise that alimony is an independent equity power; but such a view is not tenable. The jurisdiction of courts of equity in the United States is the same as that of England, whence it is derived. *Barber* v. *Barber, supra.* Under the Maryland act of 1777, the exercise of equitable jurisdiction to grant alimony was limited to such causes as could be heard and determined by the English ecclesiastical courts in applications for divorce *a mensa et thoro*, namely, adultery and cruelty. The English law did not permit divorce for desertion. 1 Bish., M. & D., Sec. 771. Therefore, the appellee, not having alleged adultery and cruel treatment on the part of the appellant, is not entitled to relief. *Helms* v. *Franciscus*, 2 Bl. Ch., 568 ; *Crane* v. *Meginnis*, 1 G. & J., 463 ; *Dunnock* v. *Dunnock*, 3 Md. Ch., 143 ; *Rhame* v. *Rhame*,

1 McC. Ch., 205 ; *Hair* v. *Hair*, 10 Rich. Eq., 172 ; *Ruckman* v. *Ruckman*, 58 How. Pr., 278.

4. Alimony *pendente lite* should not have been allowed because the court has no jurisdiction over the plaintiff, appellee. 1 Am. & Eng. Encyc., p. 468; Story, Confl. Laws, Sec. 20 ; *Richards* v. *Richards*, 19 D. C., 431. Whether or not alimony is regarded as an incident of divorce or *sui generis*, many of the principles applicable to divorce are applicable to alimony, as both causes grow out of the same class of wrongs. *Ramsden* v. *Ramsden*, 28 Hun., 285.

5. If the court should conclude that the appellee is entitled to alimony *pendente lite*, it is submitted that the allowance of fifty dollars per month is excessive viewed in the light of all the circumstances. *Cummings* v. *Cummings*, 50 Mich., 305; *Washburn* v. *Washburn*, 9 Cal., 475. The practice of courts is " to award in the case of alimony *pendente lite* from one-fifth to one-eighth " of the joint income of husband and wife. Stew., M. & D., §375; 2 Bish., M. & D., §460; *Williams* v. *Williams*, 29 Wis., 517. In this case the allowance of alimony *pendente lite* is fifty dollars, just one-third of the appellant's income,

*Mr. O. D. Barrett* for the appellee:

The general jurisdiction invoked in this case was exercised by the Maryland courts prior to 1777 in the following cases: *McNamara's Case* (1707, 2 Bland, 566 (note) ; *Codd* v. *Codd*, (1727), 1 Bland, 101 (note); *Sarah Wright's Case* (1730), 1 Bland, 101 (note); *Lynthecumb's Case* (1738), 2 Bland, 568 (note); *Scott's Case* (1746), 2 Bland, 568 (note); *Govane's Case* (1752), 2 Bland, 571 (note). During the period in which the above cases were determined, there was in Maryland no law authorizing a divorce of any kind for any cause whatever. In 1777, the legislature of Maryland, by act, declared that " the Chancellor shall and may hear and determine all causes for alimony in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there." Acts of Assembly, February, 1777,

Ch. 12, Sec. 14. But still no law in Maryland authorized any court to grant a divorce, nor was such a law passed in that State until 1841. During the period between 1777 and 1841, however, the general jurisdiction we are invoking was exercised by the Maryland courts as shown in the case of *Helms* v. *Franciscus* (1818), 2 Bl., 567. Until 1860 there was no law authorizing the courts of the District of Columbia to grant a divorce for any cause whatever, but prior to the latter date the old Circuit Court granted temporary support, pending proceedings for alimony in the case of *Auld* v. *Auld*, 4 Cranch, C. C., 84. See also, *Joslyn* v. *Joslyn*, Sup. Ct., D. C., Eq. No. 1016 (not reported); *Pelz* v. *Pelz*, Sup. Ct., D. C., Eq. No. 8306 (not reported); 1 Bishop on M. & D., Secs. 1383-1421.

The CHIEF JUSTICE delivered the opinion of the Court.

On the appeals taken, the defendant objects to the jurisdiction of the court below, as a court of equity, to grant relief on the allegations of the bill. And if there be no jurisdiction, as contended, to grant the main relief, that is, permanent alimony, irrespective of any ground for divorce, and as no ground for divorce is alleged, it follows necessarily that no alimony, either permanent or *pendente lite*, can be granted on this application.

Is there, then, jurisdiction in the Supreme Court of this District, exercising equity powers and jurisdiction, to grant alimony as permanent relief, grounded upon causes other than those upon which judicial separation, or divorce *a mensa et thoro*, could be decreed by the Ecclesiastical Court of England, at the time of the declaration of our independence?

The laws of Maryland that were continued in operation and force in this District, by the act of Congress of 1801, embraced not only the statutory law, but the common law and the system of equity law, as then known and practiced in that State. The courts, exercising chancery jurisdiction in Maryland, at that time, had no power to decree divorces of

any kind, that power resting exclusively with the legislature of the State; and it was not until the year 1841 that jurisdiction was conferred on the equity courts of the State to decree divorces for certain specified causes. Nor was there any power or jurisdiction that could be exercised by the courts of this District, to enable them to decree divorces of any kind, until given by the passage of the act of Congress of 1860, Ch. 158 (R. S. D. C., Sec. 766). Neither was there power or jurisdiction vested in the courts of either the State of Maryland or of this District, to decree or enforce the *restitution of conjugal rights*—a species of matrimonial causes brought whenever either the husband or wife is guilty of the injury of substraction, or lives separate from the other without any sufficient legal reason. 3 Bla. Com., 94. But notwithstanding the total absence of jurisdiction in the courts to decree divorces or the restitution of conjugal rights, the courts exercising chancery jurisdiction in Maryland, from an early period, long prior to the Revolution, down to the present time, have had and exercised full and complete jurisdiction to decree alimony against a delinquent or offending husband, who had deserted or maltreated his wife, and refused to provide her reasonable maintenance. This is fully shown by the cases collected by the learned Chancellor Bland, in the notes to the case of *Helms* v. *Franciscus*, 2 Bland Ch., 545, 566; and the same is fully shown and determined in the opinion of the late Chancellor Johnson, in the case of *Jamison* v. *Jamison*, 4 Md. Ch. Dec., 289, 294. The same fact in the judicial history of the State is recognized by the Court of Appeals of the State in the case of *Wallingsford* v. *Wallingsford*, 6 H. & J., 485, 488.

It is true, the legislature of the State of Maryland, by the act of 1777, Ch. 12, Sec. 14, declared that the chancellor should and might hear and determine all causes for alimony in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there. And the contention of the defendant now is, that as the circumstances of this case would not

justify the granting of a divorce *a mensa et thoro,* therefore there was no jurisdiction in the court below to entertain the application for alimony; that the court can only decree alimony in those cases where the English ecclesiastical courts could have passed sentence of divorce *a mensa et thoro.*

This is supposed to be the fair and rational construction of this act of 1777, Ch. 12. But the act must be construed with reference to the pre-existing law upon the subject, and there is nothing in the terms of this act that is *restrictive.* It is an affirmative declaration by the legislature and nothing more.

The contention for the defendant can be well answered in the language of Chancellor Johnson, in the case of *Jamison* v. *Jamison, supra.* In that case, as in this, it was contended that the statute confined the remedy to the cases within the cognizance of the English ecclesiastical courts. But to that construction the chancellor did not agree; and in answer to the argument he said: " It gives full and complete jurisdiction over the subject of cases for alimony, but there is nothing in the language embodied in the section which necessarily restricts the court to the circumstances and causes which would entitle the party applying for alimony to a divorce according to the ecclesiastical law of England. The chancellor is to hear and determine causes for alimony as fully, and with as much authority, as similar causes are heard in the ecclesiastical courts, but it does not follow that, in granting relief, he is confined to the same grounds which must be shown in those courts to entitle the wife to a divorce *a mensa et thoro.* If, indeed, the court can only decree alimony where a similar decree can be obtained in the ecclesiastical courts, or the English chancery, and it can only be obtained there as a consequence of a divorce *a mensa et thoro,* then no decree for alimony could ever have been passed in Maryland from the passage of the act of 1777 to the act of 1841, unless the legislature had previously divorced the parties. The chancellor thinks that such cannot be the true construction of the act of 1777. If it is, then, in every bill for ali-

mony, it should have been averred, to give the court juris-
diction, that the legislature had previously separated the par-
ties; and yet it is believed such averment has not been intro-
duced, or considered necessary. It is certain no such aver-
ment is to be found in the bill in this case, which has been
ruled sufficient upon demurrer." The bill had been filed in
1831, and it had been ruled good on demurrer by Chancellor
Bland, the predecessor of Chancellor Johnson.

The jurisdiction to grant alimony as independent relief has
been fully recognized and enforced by the courts of this Dis-
trict. This is shown by the case of *Auld* v. *Auld*, 4 Cranch
C. C. Rep., 84, on a bill filed in 1830, for alimony, and on
which alimony was granted "to continue until the court
should otherwise direct." And so in the case of *Pelz* v. *Pelz*,
considered and decided and decree made for alimony, by the
General Term of the Supreme Court of this District, but
which case has not been reported.

But the great and important question is at once suggested,
why should not the jurisdiction exist to remedy great social
wrongs, and to do justice to parties who are otherwise with-
out adequate means of relief? Courts are instituted to re-
dress wrongs and to furnish relief for the violation of the
laws of society, and no wrong calls more imperatively for
redress than that of a husband against his helpless wife,
whom he has pledged himself to protect and defend.

There is no question or doubt of the legal duty of the hus-
band to provide a suitable maintenance for his wife, and that
if he will not do so, some proper remedy should exist to
compel him to perform this duty. A wife may be totally
abandoned and deserted by her husband, as in this case, or
she may be driven from his home, and compelled, by his ill-
treatment and cruelty, to seek an asylum elsewhere; and yet
the conditions may not exist to enable her to apply for and
obtain a divorce, even if she desired to adopt that alternative,
and the question then arises whether, under such circum-
stances, courts of equity have a general authority to take cog-
nizance of the case, and to administer relief by decreeing ali-

mony against the delinquent husband, to supply the wants of the abused or deserted wife? It would certainly be a matter of profound regret if it were determined that no such power or jurisdiction existed in the courts.

Judge Story, in his work on Equity Jurisprudence, after referring to the English doctrine on this subject, and to what appeared to be the state of the law in this country, adds: "In America a broader jurisdiction in cases of alimony has been asserted in some of our courts of equity, and it has been held that if a husband abandons his wife, and separates himself from her without any reasonable support, a court of equity may, *in all cases*, decree her a suitable maintenance and support out of his estate, upon the very ground that there is no adequate or sufficient remedy at law in such a case, and there is·so much good sense and reason in this doctrine, that it might be wished it were generally adopted." 2 Eq. Juris., Sec. 1423*a*.

Since the writing of that very learned and distinguished jurist, the doctrine enunciated in the section of his work just quoted has become more generally adopted, and, indeed, in a large number of the States, has become the firmly settled law. And, after all, it is but a small and reasonable amplification and extension of a well established doctrine of equity, that whenever the wife has any equitable property within the reach of the jurisdiction of a court of equity, it will lay hold of it, though the husband may be *legally* entitled to it; and in the case of the desertion or ill treatment of the wife by the husband, as well as in the case of his inability or refusal to maintain her, the court will decree her a suitable maintenance out of such equitable funds. *Nicholls* v. *Danvers*, 2 Vern., 671 ; *Wright* v. *Morley*, 11 Ves., 20-23 ; *Duncan* v. *Duncan*, 19 Ves., 394, 397; 2 Sto. Eq. Juris., Sec. 1424. In decreeing alimony the money is payable out of the estate of the husband, instead of the payment out of the equitable property of the wife that the husband might be entitled to seize.

To entitle the wife to alimony, it is, of course, necessary that she should establish the fact of desertion or ill treatment

on the part of the husband, and that he has refused to maintain her, and that she has not been guilty of conduct to afford justification for the action of the husband. It being the duty of the husband to support his wife, his failure or refusal to do so without justification, is a wrong at the common law, but inasmuch as the common law furnishes no remedy, because the wife cannot sue the husband, courts of equity will and do supply the remedy. Indeed, to deny the remedy on such an application as the present on the ground of want of jurisdiction to afford it, would have the effect of driving the wife, in every case, to the extremity of applying for a divorce, in order to obtain such allowance as might be made to her, as incident to that proceeding, but which she ought to receive without such application; and thus the delinquent and offending husband would obtain what he most desired, and what his unjustifiable conduct had forced upon his wife, namely, freedom from his marital obligations. There is ample in this case to show such to have been the desire of the defendant husband.

The decisions that maintain the right of a deserted or maltreated wife to apply to a court of equity and obtain a decree for alimony against her husband, as independent substantive relief, are numerous and are entitled to the highest respect. Prominent among the cases sustaining this doctrine are *Purcell* v. *Purcell*, 4 Hen. & Munf., 507; *Butler* v. *Butler*, 4 Litt., 202; *Galland* v. *Galland*, 38 Cal., 265; *Garland* v. *Garland*, 50 Miss., 694; *Prince* v. *Prince*, 1 Rich. Eq., 282; *Graves* v. *Graves*, 36 Iowa, 310; *Glover* v. *Glover*, 16 Ala., 440; *Earle* v. *Earle*, 27 Nebr., 277. See, also, the recent work of Brown on Divorce and Alimony, at page 268, where the cases are collected, and the result of the decisions stated.

It is also objected that, if there be jurisdiction in the court to grant alimony as independent relief, the plaintiff does not show herself to be entitled to maintain this suit against her husband residing here, because the parties were married in the State of Massachusetts, and the plaintiff has continued to reside there ever since the marriage. We are clearly of

opinion this contention cannot be maintained. Section 740 of the Revised Statutes relating to this District prohibits the granting of divorces for any causes that may have occurred out of this District, unless the party applying shall have resided in the District for two years next preceding the application. But this statutory provision has no application to this case. This is not an application for a divorce, but for maintenance, founded upon the continued relation of husband and wife, and to continue only so long as the husband may think proper to live separate from his wife, and refuse or neglect to discharge his marital obligations. The husband resides here, and is therefore subject to the jurisdiction of the court.

Upon the whole, this court is of opinion that there is full jurisdiction in the court below to grant the relief prayed; and if the allegations of the bill be established, the plaintiff will be entitled to a decree for permanent alimony; and the bill showing a case for permanent alimony, the plaintiff is entitled to an allowance *pendente lite* for support and counsel fees.

With respect to the amount of such allowance *pendente lite*, that depends largely upon the extent of the *delictum*, and the pecuniary circumstances of the husband. It is mainly a matter of discretion in the court below, though a judicial and not an arbitrary discretion. A court of appeals must see clearly that the allowance is excessive before it will interfere to reduce it. In this case, looking to all the disclosures made in the pleadings, we cannot say that the allowances for support *pendente lite*, and for counsel fees, are excessive. In view of the salary received by the defendant, these allowances would seem to be reasonable.

Then, with respect to the ruling of the court below on the plaintiff's exceptions to certain parts of the answer of the defendant, as being scandalous and irrelevant, this court fully concurs with the court below. The matter set forth in the answer and excepted to, could have no other effect than to degrade the character of the plaintiff; and all the matter

stricken from the answer has reference to the relations that subsisted between the defendant and the plaintiff prior to the marriage. The immoral and illicit conduct narrated was participated in by the defendant, at least to an equal degree with the plaintiff; and the shame and disgrace of the whole affair attach to him no less than to the plaintiff. Being *particeps criminis*, it does not lie in his mouth to set up any such matter as a shield to himself in any respect. Nor can he be allowed for a moment to set up and treat the marriage as a mere formal or meretricious affair, imposing no obligations, and to be gotten rid of at the will or pleasure of either of the parties. Such an attempted defence but aggravates the wrong, both to the woman and to society. The learned judge below was clearly right in having stricken from the record the scandalous matter excepted to.

It follows that the orders appealed from must be affirmed, with costs to the appellee; and the cause will be remanded for further proceedings.

*Affirmed.*