GERTRUDE MALLINA, Petitioner, *v.* RUDOLPH F. MALLINA, Respondent.

Domestic Relations Court of City of New York, Family Court, New York County, April 29, 1938.

*Dorothy A. Ferdinand*, for the petitioner.

*Delson, Levin & Gordon* [*I. Cyrus Gordon* of counsel], for the respondent.

PANKEN, J.   The petition herein alleges that the respondent has refused and neglected to provide fair and reasonable support for his child according to his means and earning capacity since the 2d day of March, 1938, and asks for an order requiring him to

support the said child in a manner which will be deemed to be fair and reasonable.

Subdivision 1 of section 92 of the Domestic Relations Court Act, as amended in 1936, reads: " To order support of a wife or child or both, irrespective of whether either is likely to become a public charge, as justice requires having due regard to the circumstances of the respective parties."

The respondent puts in issue the jurisdiction of this court to hear and determine the rights of the child. Upon his application to dismiss the petition on the ground of lack of jurisdiction of the court, it must be assumed that had the court jurisdiction of the subject-matter an order for adequate support of the child could be met by the respondent. It may also be assumed that, upon testimony to be submitted, a showing would be made by the petitioner that, regardless of the fact that the child in question is not a public charge, an order requiring the respondent to contribute a greater sum than he now contributes would be entered in response to the requisites of justice " having due regard to the circumstances of the respective parties."

It was conceded on the argument of the motion that a decree of divorce was granted to the mother of the child in question in the month of December, 1936, by the Second Judicial District Court of the State of Nevada, county of Washoe, awarding her an absolute divorce from the respondent and incorporating therein and approving a certain agreement which was entered into between the parties under the terms of which custody of the child was to be given to the mother and requiring the respondent to contribute fifty dollars monthly for the support of the child until she will have reached her majority.

The provisions of the decree of the Nevada court have been complied with by the respondent. He has and is contributing fifty dollars monthly for the support of the child and has evinced his willingness to so do in the future.

It is the contention of the respondent that this court has no jurisdiction to make other provisions for the support of the child than is encompassed in the decree of the Nevada court. The question to be determined by me on this application is whether or not the Domestic Relations Court of the City of New York can make an order for the support of a child, provision for whom had been made in a divorce decree of a foreign State wherein the court had obtained jurisdiction of the status and the parties.

Section 1 of article 4 of the Constitution of the United States reads: " Full faith and credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other

State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved and the Effect thereof."

It might seem that the Nevada court, having obtained jurisdiction of the father and mother of the child, its decree must be given full faith and credit. The child was not a party to the litigation. In fact, the child was at no time, as I gather from the argument made, in the State of Nevada. Shall a decree affecting a child who was not domiciled and residing within the jurisdiction of the issuing court be binding upon such child and deprive it of whatever rights it may have in the jurisdiction of its domicile and residence?

In determining the extent of maintenance and support for a child, the courts in the various States of the Union necessarily take account of the standards prevailing in those States and the cost of maintenance to meet such standards. It is common knowledge that standards and the cost of maintaining standards vary at different times in the several sections of our nation.

By the agreement which was incorporated in the decree it is quite likely that the provisions made therein for the child were deemed by the Nevada court to have been adequate.

Is it to be said that a child will always be bound by an agreement made on its behalf by a parent? Many factors beneficial to the contracting parties might foreclose the rights of the beneficiary of such a contract.

Section 137 of the Domestic Relations Court Act provides in part: " After final adjudication by the Supreme Court denying alimony in a separation action, if in the opinion of the Family Court the circumstances of the parties have changed or if it is shown to the satisfaction of the Family Court that the petitioner is likely to become a public charge, the Family Court may entertain a petition for support. An agreement to separate shall in no way preclude the filing of a petition for the support of a child nor of the making of an order for its support by the Family Court."

Under the Domestic Relations Court Act a final adjudication by our Supreme Court does not preclude, if the circumstances of the parties have changed, the Family Court from making an order for the support of a wife or child. It is provided that a separation agreement between father and mother will not preclude the filing of a petition for support of a child nor the making of an order for its support.

Shall the decree of a court of a foreign jurisdiction be placed in a different category than that of a decree of our court? Is it to be permitted to act in foreclosure of the rights of a child to be ade-

quately supported by its father as justice requires and as the circumstances of the parties permit?

Under our law, if circumstances have changed between the parties, the Family Court may make an order in consonance with such changed circumstances though there be a final adjudication in the Supreme Court of our State. If circumstances have changed between the parties before me since the final adjudication by the Nevada court and the father is now in a position to make more adequate provision in accordance with his means and as justice requires, I cannot hold that the child is not entitled to such provisions.

It is apparent from the conceded facts that the residence was established in the State of Nevada to the end that jurisdiction might be conferred upon the courts of that State to pass upon the allegations in a projected complaint for an absolute decree of divorce between the mother and father of the child herein.

The chief judge in *Glaser* v. *Glaser* (276 N. Y. 296) said: " The plaintiff alleges in her complaint that the power of attorney was procured from her by fraud and false representations, that she never intended to execute such a document and did not intend to submit herself to the jurisdiction of the Nevada court either by appearance in person or through an attorney. She also alleges that defendant was not an actual and *bona fide* resident of the State of Nevada at the time he instituted the divorce, that he went there solely to procure the decree and never gave up his residence in the State of New York. These issues have been resolved by the courts below against the plaintiff. It has been found that defendant ' duly became a resident of the State of Nevada,' * * *. There is evidence to support these findings and this court cannot interfere with them."

In compliance with the purposes of the Constitution of the United States, full faith and credit, therefore, must be accorded to the decree issuing out of the Nevada court in so far as the persons who submitted to that court are concerned.

The domicile of the child's father herein was not in the State of Nevada. The father's submission to the jurisdiction of the court in that State did not change his domicile nor that of the child. Until custody of the child was awarded by the court to the mother the domicile of the father was that of the child. (*Yarborough* v. *Yarborough*, 290 U. S. 202.)

The courts have been jealous of the rights of children. The mantle of protection of courts has always been, both under the common as well as under statute law, accorded to the child. Provision for the maintenance and support of the child as decreed by

the Nevada court was, evidently, based upon an agreement between the parents rather than on findings of fact and law. A child will not be permitted to be deprived of its rights even if the deprivation is at the hand of a parent or parents.

The State, through its instrumentalities, cares for the child population. It affords the child opportunities for education; indeed, it even compels education of the child. The proper upbringing of children, their education, their physical care and recreational opportunities, their response to social needs, has in the course of the last few generations developed and has become a State or community concern. While parents are still entitled to the services of children until they reach majority, those rights have been considerably modified. A parent may not apprentice his child in contradiction or violation of the Compulsory Education Law; the parent cannot permit his or her child in violation of law to work hours prohibited by law; parents may not hire out their children to engage in activities prohibited by law.

The development of social responsibility as between the community and the individual and that of the individual towards the community has compelled, properly and rightly so, a diminution of the theretofore rights of parents over their children.

In *Yarborough* v. *Yarborough* (*supra*) the Supreme Court held that due faith and credit must be given a divorce decree entered in the State of Georgia and to the provisions in that decree made for the maintenance of an infant child. The evidence in that case disclosed that Mr. and Mrs. Yarborough and their infant daughter were domiciled in the State of Georgia. In June of 1927 the wife left her husband and took up residence in the State of North Carolina. The child joined her in that State. In September of that year the husband sued the wife in Georgia for a divorce. A cross-suit was filed by the wife for a divorce and custody of the child as well as alimony for herself and maintenance for their child. In that action the husband was successful, but by an agreement between the parties, which was incorporated in the decree, provision was made for the support of the child, who was then living with her mother in the State of South Carolina, and custody thereof was awarded to the mother. The judgment passed upon by the United States Supreme Court was obtained in the State of South Carolina.

Mr. Justice BRANDEIS, in the prevailing opinion, said: " Being a minor, Sadie's domicile was Georgia, that of her father; and her domicile continued to be in Georgia until entry of the judgment in question. She was not capable by her own act of changing her domicile. Neither the temporary residence in North Carolina at the time the divorce suit was begun, nor her removal with her

mother to South Carolina before entry of the judgment, effected a change of Sadie's domicile."

On the question of jurisdiction by a Georgia court it was said: "As that suit embraces within its scope the disposition and care of minor children, jurisdiction over the parents confers *eo ipso* jurisdiction over the minor's custody and support."

The facts in the instant case are different than those existing in the *Yarborough* case. The child involved herein was domiciled with its father in the State of New York. The jurisdiction by the Nevada court was by submission thereto on the part of the respondent rather than by residence and domicile therein, as in the *Yarborough* case.

The prevailing opinion holds from the fact that the child had become a resident of the State of South Carolina, that State "acquired the jurisdiction to determine her status and the incidents of that status." The court said: "Upon residents of that State it could impose duties for her benefit. Doubtless, it might have imposed upon her grandfather who was resident there a duty to support Sadie. But the mere fact of Sadie's residence in South Carolina does not give that State the power to impose such a duty upon the father who is not a resident and who long has been domiciled in Georgia."

The respondent as well as the child, as has already been said in the instant case, are residents of the State of New York, and were residents within our jurisdiction at the time the divorce decree was entered in Nevada and have continued that status.

The concluding paragraph by Mr. Justice BRANDEIS in the *Yarborough* case reads: "We need not consider whether South Carolina would have power to require the father, if he were domiciled there, to make further provision for the support, maintenance, or education of his daughter."

It would seem from the above that the question as to whether or not the full faith and credit clause of the Constitution would preclude one of the several States in which a father, a resident therein, would be required to provide for his child who is also a resident and domiciled therein, was not passed upon by the United States Supreme Court.

In the dissenting opinion by Mr. Justice STONE, concurred in by Mr. Justice CARDOZO, it is said: "As this court has often recognized, there are many judgments which need not be given the same force and effect abroad which they have at home, and there are some, though valid in the State where rendered, to which the full faith and credit clause gives no force elsewhere. In the assertion of rights, defined by a judgment of one State, within the territory of

another, there is often an inescapable conflict of interest of the two States, and there comes a point beyond which the imposition of the will of one State beyond its own borders involves a forbidden infringement of some legitimate domestic interest of the other."

The jurisdiction acquired by the Nevada court made the decree effective to end the marriage for all States. Mr. Justice STONE, in the *Yarborough* case, calls attention to the fact that such a decree, while it may be effective to end the marriage for all States, " the enforcement of its prohibition against remarriage in another State, even though the parties do not take up their residence there, would infringe upon the interest which every State has to maintain the stability of a union entered into according to the laws of the place of celebration."

" The measure," Mr. Justice STONE said, " of the duty is the needs of the child and the ability of the parent to meet those needs at the very time when performance of the duty is invoked. Hence it is no answer in such a suit that at some earlier time provision was made for the child, which is no longer available or suitable because of his greater needs, or because of the increased financial ability of the parent to provide for them, or that the child may be maintained from other sources."

The provision made under the Nevada decree might have been ample for the support of the child in that State at the time it was entered and mayhap in accord with the ability at that time of the parent. The child has now grown some. It is living in the city of New York. The financial ability of the parent may have improved. The cost of living in New York may be greater.

There has been no determination upon the question as to whether the full faith and credit clause of the Constitution of the United States precludes the right of the State of New York to require a parent to make provision for his child in accord with his financial ability. The provisions of the Domestic Relations Court Act are, therefore, applicable and the contribution by the father is to be on the basis of the duty and the present need of the child and the ability of the parent to provide for it.

The measure of self-preservation in the State of New York to secure adequate protection and maintenance of helpless members in this community and its prospective citizens is such as put in conflict its domestic interests with that of the State of Nevada, and hence the full faith and credit clause which under the Constitution of the United States is to be given to a decree of that State's court cannot be invoked by the respondent.

It has been held in the case of *New York Life Insurance Company* v. *Head* (234 U. S. 149) that a judgment of a foreign State

cannot be held to inflict the parties "with a perpetual contractual paralysis." (Cited in the *Yarborough* case.) "The obligation of the husband to provide his wife and children with the necessaries of life suitable to their condition is to be measured with reference to his pecuniary ability, honestly exercised, or his pecuniary resources." (*De Brauwere* v. *De Brauwere*, 203 N. Y. 460.)

Pecuniary resources and financial ability change. The parent of a child may only be in a position to provide the bare necessities for an offspring at one time, and later in its life may be in a position to financially provide for it abundantly. An order made for the support of a child when the pecuniary resources of the parent are limited should not militate against the child at a later period when the financial ability of the parent permits abundant and adequate provision.

Failure on the part of a parent to make adequate provision in accordance with financial ability is the basis for the power vested in the court as an instrumentality of the State to compel that.

The Nevada decree is not clothed with the power to inflict " perpetual paralysis " upon the courts of the State of New York to provide for a child that has been domiciled and a resident within its jurisdiction at the time the Nevada court acted and is now a resident within its borders.

In the case of *People ex rel. Jones* v. *Johnson* (205 App. Div. 190) the court said: " The Supreme Court of this State, as the guardian of all infants within its jurisdiction, has inherent power in a proper case to take the custody of a child from either of its parents, if such a course is for the best interests of the child."

In the above cited case a decree of divorce was obtained by the mother of the child in the State of Florida, and custody of the child was granted her by virtue of that decree.

Despite the Florida decree, our court, because of the conduct of the mother and because the best interest of the child required it, withheld custody of the child from the mother to whom custody thereunder was awarded.

The Domestic Relations Court, under the act governing it, has the power to compel a parent to make proper provision for the support of children as justice may require and as the best interests of the children compel.

I am referred to *Ansorge* v. *Armour* (267 N. Y. 492) in support of the motion to dismiss the proceeding. In that case Chief Judge CRANE, quoting from opinion below (147 Misc. 313), said: " ' Each parent admits that the other is morally and culturally fit to have custody of the child. The father admits that his former wife during the time she lived at his home was a perfect mother to the

little girl, and the court does not take seriously the slight evidences claimed by the mother to be indicative of the fact that the child is being neglected in its father's home.' "

Chief Judge CRANE continued: " In view of these findings, and in the absence of any evidence in this record showing that the welfare of the child demands a modification or a change in the custody as awarded by the divorce decree, we cannot find that justification for a habeas corpus proceeding which makes it necessary for the father to pay the lawyer hired by the mother to conduct it."

It might well be that had the child's interests required action by the court in its protection, the determination by the Court of Appeals might have been different, as is indicated in the quotation from Chief Judge CRANE's opinion.

On the conceded facts before me and on the law, I conclude that the Domestic Relations Court of the City of New York has jurisdiction in a proceeding asking for adequate support for a dependent child in accord with the financial means and ability of its father.

The petition herein should be amended to include the allegations setting forth fully the facts.