**SCHOLLA v. SCHOLLA (two cases).**

Nos. 11267, 11268.

United States Court of Appeals
District of Columbia Circuit.

Argued May 21, 1952.

Decided Jan. 8, 1953.

Petition for Rehearing in No. 11267
Denied Jan. 26, 1953.

212

Frederick A. Ballard, Washington, D. C., with whom Eugene B. Thomas, Jr., Washington, D. C., was on the brief, for Lois T. Scholla.

Elizabeth R. Young, Washington, D. C., for Paul F. Scholla.

Before, CLARK, PROCTOR and WASHINGTON, Circuit Judges.

PROCTOR, Circuit Judge.

These are cross-appeals from an order of the District Court dismissing the complaint (11268) and allowing a fee to the attorney for plaintiffs (11267).

Lois T. Scholla, as next friend for her minor children Paul and Barbara, sued Paul F. Scholla, her divorced husband and father of said children. The complaint re-

vealed the following facts. Mrs. Scholla and the children, Paul and Barbara, resided together in Virginia, and Mr. Scholla, defendant, resided in the District of Columbia. By decree of the Circuit Court of Lake County, Florida, May 20, 1949, Mrs. Scholla was granted an absolute divorce and custody of the couple's three children, Paul and Barbara, plaintiffs, and Sandra, now living with her father. The decree also allowed $250 monthly, payable to Mrs. Scholla for support of herself and the children. The defendant has made no payments since January, 1951, leaving Mrs. Scholla and the children Paul and Barbara dependent upon Mrs. Scholla's inadequate earnings as a Government employee, although Mr. Scholla's income exceeds $1000 per month. After the divorce he remarried and has one child by his present wife. In behalf of the children Paul and Barbara, though not for herself, Mrs. Scholla prayed for a reasonable monthly allowance for their maintenance. In her own behalf she sought judgment for $500, accrued installments under the Florida decree. She also asked for costs and counsel fees. A true copy of the Florida decree was exhibited with the complaint.

The defendant moved to dismiss the complaint. The court granted the motion. It held that the children, as nonresidents, were precluded from suing for maintenance in the District of Columbia, hence that the court was without jurisdiction to entertain their action. In this we think the court erred. According to the complaint the father is a resident of the District of Columbia. The suit for maintenance is a personal, transitory action. Vertner v. Vertner, 1934, 63 App.D.C. 179, 70 F.2d 783. See Melvin v. Melvin, 1942, 76 U.S.App.D.C. 56, 58, 129 F.2d 39, 41, (concurring opinion of Judge Stephens). The complaint invokes the general equity power of the court to grant maintenance to the children. Schneider v. Schneider, 1944, 78 U.S.App.D.C. 383, 141 F.2d 542; Wedderburn v. Wedderburn, 1917, 46 App.D.C. 149. In view of the father's residence in the District of Columbia, the children were entitled to sue him therein, notwithstanding

their own residence in Virginia. The District of Columbia Code makes that clear. It provides that the District Court shall have cognizance "of all cases in law and equity between parties, both or *either* of which shall be resident or be found within said district." (Emphasis added.) 11 D.C.Code § 306, 1951.

■ The court also ruled that in view of the Florida decree the only remedy in behalf of the children was by suit in debt for the amount of accrued installments. Thus in effect the court held that the Florida decree was res judicata. We agree with that conclusion. This, however, is not to say, as has been argued, that the District Court lacked jurisdiction of the subject matter. For, we have pointed out that the court did have the power to compel a father to support his minor children. So the power could have been exercised in the present case except for the fact, shown by the complaint itself, that maintenance for the children had been adjudicated by the Florida court. Yet, res judicata does not create a jurisdictional bar. It operates only by way of estoppel. Baltimore S. S. Co. v. Phillips, 1927, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; Aurora City v. West, 1868, 7 Wall. 82, 19 L.Ed. 42. Hence it is an affirmative defense, which ordinarily must be pleaded by a defendant. Fed.R. Civ.P. 8(c), 28 U.S.C. But as the Florida decree was fully set forth in the complaint, the court, in acting upon the motion to dismiss, was justified in taking note of the decree and dismissing the complaint because of it. W. E. Hedger Transp. Corp. v. Ira S. Bushey & Sons, Inc., 2 Cir., 1951, 186 F.2d 236.

■ However, in dealing with the doctrine of res judicata in relation to this action for maintenance, perhaps we should point out that there is some authority to sustain a suit for alimony or maintenance notwithstanding the existence of a valid decree in another jurisdiction. Ambrose v. Ambrose, 1951, 200 Misc. 595, 102 N.Y.S.2d 837; Conwell v. Conwell, 1949, 3 N.J. 266, 69 A.2d 712; James v. James, Dom.Rel.Ct. 1946, 59 N.Y.S.2d 460. A study of these cases indicates that without disregarding the doctrine of res judicata, they extended relief upon the basis of a material change in circumstances of the parties, sufficient to have legally justified modification of the terms of the existing decree by the court which entered it. The theory upon which these decisions rest is that alteration of conditions warranting modification of a decree for alimony or maintenance produces factual issues for adjudication which were non-existent when the decree was made, and which have never been adjudged. Hence, a suit may be entertained, if jurisdiction over the parties is established, without transgressing the doctrine of res judicata. In short, new facts create new issues. Although this court has never directly passed upon the point,[1] we have applied the principle in custody cases. Boone v. Boone, 1945, 80 U.S.App.D.C. 152, 150 F.2d 153; Cook v. Cook, 1943, 77 U.S.App. D.C. 388, 135 F.2d 945; Boone v. Boone, 1942, 76 U.S.App.D.C. 399, 132 F.2d 14, certiorari denied, 1943, 319 U.S. 762, 63 S.Ct. 1319, 87 L.Ed. 1713. Yet, if we should favor the rule it could not avail appellants in the circumstances presented by their complaint, which alleges no facts to justify application of such a rule to their case. Indeed, the suit has not been prosecuted upon any theory that would bring it within the scope of the cases cited. It rests upon the single proposition that as the father's legal duty to support his minor children is a continuing one res judicata does not apply to a judgment for their maintenance; therefore the Florida decree constitutes no bar to this action in the District of Columbia. We cannot agree with the broad contention, and must hold that upon the facts stated by the complaint, the decree is res judicata and entitled to full faith and credit by the courts of the District of Columbia. U. S. Const. Art. IV, § 1; Yarborough v. Yarborough, 1933, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269.

---

1. But see Rosenberger v. Rosenberger, 1938, 68 App.D.C. 220, 95 F.2d 349, which may imply approval of the rule.

The suggestion has been made that this case should be governed by Schneider v. Schneider, supra, which decided that our District Court had authority to award maintenance for a child notwithstanding a Nevada decree for its support. But that decision is grounded upon a ruling that the Nevada court lacked jurisdiction over the obligation of the father to provide support, in view of the fact that neither father nor son had a Nevada domicile. It seems also that the son was not even present in the State. However, in the present case validity of the Florida decree is not questioned, as indeed it could not be, for there was undoubted jurisdiction in the court to support the provision for maintenance of the children, who were actually living in Florida in the care and custody of their mother. See Fla.Stats.1949, F.S.A., § 65.14.

This court cannot properly override the principles of res judicata or disregard the full faith and credit clause of the Constitution. The obstacles they present in a case like this call for legislation authorizing the establishment in our District Court of final decrees of the courts of other jurisdictions granting alimony or maintenance, and the enforcement of such decrees, when so established, by the same means and methods provided by our laws for enforcement of local decrees. As the law now stands foreign decrees cannot be so enforced. Worsley v. Worsley, 64 App.D.C. 202, 76 F.2d 815, certiorari denied, 1935, 294 U.S. 725, 55 S.Ct. 640, 79 L.Ed. 1256; Grant v. Grant, 1935, 64 App.D.C. 146, 75 F.2d 665; Davis v. Davis, 1907, 29 App.D.C. 258, 9 L.R.A., N.S., 1071.

 By his cross-appeal the defendant below attacks the order allowing costs and counsel fees. In so doing we think the court acted within its authority and discretion, notwithstanding dimissal of the complaint. See Ruby Lee Minar Inc., v. Hammett, 1931, 60 App.D.C. 291, 53 F.2d 149, where this court affirmed the allowance of costs to a plaintiff in an equity suit, notwithstanding dismissal of the bill. The only objection raised to the allowance of costs and counsel fees rests upon the argument that there was a total lack of jurisdiction over the cause of action, leaving the court with no power but to dismiss the complaint. Our ruling against this contention disposes of the present question. We take it there is no dispute that the general equity powers of the court permit an award of costs and counsel fees in behalf of a wife suing for maintenance. This was settled as early as Tolman v. Tolman, 1893, 1 App. D.C. 299; Shaw v. Shaw, 1894, 2 App.D.C. 204, which sustained the authority of the Supreme Court of the District of Columbia, predecessor to the present District Court, to make such allowances. See also Bates v. Bates, 1944, 79 U.S.App.D.C. 14, 141 F.2d 723; Melvin v. Melvin, supra; Lesh v. Lesh, 1903, 21 App.D.C. 475.

The District Court also ruled that the claim of Mrs. Scholla for $500, overdue installments under the Florida decree, fell within the exclusive jurisdiction of the Municipal Court.[2] We agree with that ruling.

The judgment of the District Court is Affirmed.

WASHINGTON, Circuit Judge (dissenting).

For some years it has been the rule in this jurisdiction that foreign maintenance decrees, unlike domestic ones, cannot be enforced here by means of equitable process. A woman holding such a decree against her ex-husband can only sue him at law, as on an ordinary debt, for arrearages which have accrued under the decree.[1]

---

2. 11 D.C.Code § 755, 1951:

"(a) The Municipal Court for the District of Columbia * * * shall have exclusive jurisdiction of civil actions * * * in which the claimed value of personal property or the debt or damages claimed, exclusive of interest, attorneys' fees * * * and costs, does not exceed the sum of $3,000 * * *."

1. Worsley v. Worsley, 1935, 64 App.D.C. 202, 76 F.2d 815, certiorari denied 294 U.S. 725, 55 S.Ct. 640, 79 L.Ed. 1256; Grant v. Grant, 1935, 64 App.D.C. 146, 75 F.2d 665. The opinions in these cases rely in part on Davis v. Davis, 1907, 29 App.D.C. 258, 9 L.R.A.,N.S., 1071. But the Davis case does not stand for the proposition that there can be no specific

She and the children in her custody must somehow survive until enough arrearages to be worth the cost of suit accrue, must then succeed in obtaining service of process, and must nevertheless remain remediless if they cannot also find property on which to levy. Recently this increasingly discredited approach[2] to the problem of support in an increasingly mobile society has been supplemented by other decisions of this court. In Kinney v. Kinney we held that the ex-wife cannot even sue here for arrearages, when they have accrued under a decree subject to retroactive modification in the issuing jurisdiction.[3] Such modification is permitted in a large number of jurisdictions—perhaps a majority.[4] And in Fowler v. Ross[5] we refused to surrender a delinquent father for extradition to the state which sheltered his children, and from which he fled after his trial, because the crime of non-support was committed (or so we said) during his absence from the state. The cumulative tendency of these decisions has been to make the District of Columbia a haven for divorced fathers who seek to evade the obligation to support their families. In today's ruling the court adds another to this restrictive line of cases. The majority holds that the children—and presumably the ex-wife—have no independent or auxiliary or additional right to maintenance under District law: any pre-existing District right to maintenance is cut off by the doctrines of res judicata and full faith and credit, after their right to maintenance under foreign law is adjudicated. I believe that this holding is inconsistent with the approach we took in Schneider v. Schneider, 1944, 78 U.S.App.D.C. 383, 141 F.2d 542, 543. There, realistically I think, we stated the question to be "whether a father, by instigating and abetting a collusive divorce decree in a foreign jurisdiction, can escape the obligation for adequate support of his son imposed on him by the law of his domicile." We gave a flat answer—No. On that authority, I would reverse and remand.

2. See Annotation, 18 A.L.R.2d 862. "The decided trend of the more recent cases is in line with the view * * * that a decree for alimony represents more than a debt, that its basis is the natural obligation of the husband to support his wife and children, which is a matter of public concern whether the obligation is first judicially declared in the state of the forum or elsewhere, that the urgency for its effective enforcement is equally as great in one state as in the other, and that therefore it should be enforced by the same remedies as are applicable to domestic decrees for alimony. And under this view the courts in an increasing number of more recent cases have enforced the foreign decree of alimony, or a local decree based thereon, by the same equitable remedies as local decrees for alimony, such as contempt, sequestration, receivership, injunction, or imposition of an equitable lien." Id. 18 A.L.R.2d at page 867.

3. Kinney v. Kinney, 1952, 90 U.S.App.D. C. 346, 196 F.2d 587. Not only is such a decree not entitled to full faith and credit, according to the court, but "it is not actionable in this jurisdiction under the principles of comity." On the latter point, the court cites Griffin v. Griffin, 1946, 327 U.S. 220, 66 S.Ct. 556, 90 L. Ed. 635, which does not seem relevant. Compare Kephart v. Kephart, 1951, 89 U.S.App.D.C. 373, 193 F.2d 677, certiorari denied 342 U.S. 944, 72 S.Ct. 557, concurring opinion 89 U.S.App.D.C. 387–389, 193 F.2d 691–693. As a result, the ex-wife in such a case can only return to the issuing jurisdiction and seek a judgment or decree in gross on the accrued amounts there. Cf. Collins v. Collins, 1948, 160 Fla. 732, 36 So.2d 417. It may be necessary for her again to serve her ex-husband with process. In any event, she must at least give him notice of the new proceeding, before the judgment or decree so obtained can be made the basis of execution in the District. Griffin v. Griffin, supra.

4. See Kephart v. Kephart, supra note 3, concurring opinion at 89 U.S.App.D.C. 384, 193 F.2d 687. Luckily for the appellant in the present case, her Florida maintenance decree cannot, it seems, be modified retroactively by a Florida court. Blanton v. Blanton, 1944, 154 Fla. 750, 18 So.2d 902.

5. 1952, 90 U.S.App.D.C. 305, 196 F.2d 25; Note, 66 Harv.L.Rev. 356 (1952).

enforcement of a foreign decree in this jurisdiction. 29 App.D.C. at page 263.

True, the majority opinion suggests that the restriction it now imposes may be evaded. If, the opinion says, the wife shows a District of Columbia court that circumstances have changed since the foreign maintenance award was made, then the bars of res judicata and full faith and credit may be let down. The local court may be able to adjust the award in the light of the new facts. But the majority requires, in any event, that the changed circumstances be pleaded. Otherwise, the reasoning seems to run, the local court has no reason to believe there has been any such change, and, knowing of the foreign maintenance award, it cannot but renounce its own jurisdiction to make any other award. Such a pleading requirement is contrary to the spirit of the Federal Rules. Recognition that need for and ability to provide maintenance are likely to change with time is implicit in the general willingness of courts to modify their own maintenance decrees, prospectively and sometimes even retroactively. In the light of this prevailing judicial attitude, it seems rather incongruous to insist that, unless a change in circumstances is alleged, the court must assume that they remain unchanged. Seldom, especially in these days of inflation, will it be impossible to show that with the passage of time there has been a substantial change in the needs of the wife or children, or in the ability of the ex-husband to support them.[6] It hardly seems likely, therefore, that the pleading requirement will promote economy or efficiency in the administration of justice. The choice is simply between disposing of the ex-wife's claim on the merits when it is first made and postponing such decision, perhaps to the serious detriment of herself or her children, while her claim is restated. Nor do other jurisdictions appear to impose any such pleading requirement in the same circumstances.[7] To the extent that they regard the existence of a foreign maintenance decree as any limitation on their right to award maintenance under local law,[8] it apparently suffices that the new facts which justify their action be developed in the course of a hearing on the merits.

Practically speaking, of course, permitting issuance of a domestic decree upon the basis of changed circumstances is not entirely consistent with the rule of the Worsley and Grant cases (supra, note 1)—whether or not the change must be pleaded. In my view it is entirely proper that these cases should thus, in substance, be disregarded. I agree that the existence of a for-

6. Indeed, some courts seem to regard change of circumstances as implicit in the mere facts of difference in time and location. See Durfee v. Durfee, 1936, 293 Mass. 472, 200 N.E. 395; Mallina v. Mallina, 1938, 167 Misc. 343, 4 N.Y.S.2d 27; Cf. Karchmer v. Kane, 1949, 275 App.Div. 715, 87 N.Y.S.2d 81.

7. New Jersey: Levy v. Levy, 1939, 9 A.2d 779, 17 N.J.Misc. 324 (award based on evidence as to present circumstances derived from "proofs"; no indication that present circumstances were pleaded); Massachusetts: Durfee v. Durfee, supra [293 Mass. 472, 200 N.E. 399] (new award made with only passing reference to "divergent conditions and * * * earlier time"; changed circumstances not pleaded); New York: Ambrose v. Ambrose, 1951, 200 Misc. 595, 102 N.Y.S.2d 837 (no indication that changed circumstances pleaded); Farah v. Farah, Dom. Rel.Ct.1950, 99 N.Y.S.2d 972 (same); James v. James, Dom.Rel.Ct.1946, 59 N.

Y.S.2d 460 (same). In these jurisdictions, it appears that the ex-wife simply pleads the local statute authorizing the court to grant maintenance.

8. New Jersey courts have held that a foreign decree which may be prospectively modified is not so final that it merits full faith and credit as to future installments. Conwell v. Conwell, 1949, 3 N.J. 266, 69 A.2d 712; Cf. Goodman v. Goodman, 1937, 194 A. 866, 15 N.J.Misc. 716. See also Sackler v. Sackler, Fla., 1950, 47 So.2d 292, 18 A.L.R.2d 856. The Massachusetts court in Durfee v. Durfee, supra, did not consider res judicata or full faith and credit at all in making the new award. Compare Karchmer v. Kane, supra [275 App.Div. 715, 87 N.Y.S.2d 82] (the "full faith and credit clause * * * does not prevent consideration of the needs of the child and the circumstances of both parents and an award in accordance therewith." );

eign maintenance award should be held to impose no bar to the issuance of a domestic maintenance decree, enforceable by means of equitable process, when circumstances have changed—or even when, without such change, new evidence is offered.[9] But I would go further. It is quite unrealistic, unnecessary, and, in my view, unwise, to attempt to apply the doctrines of res judicata and full faith and credit in bar of a child's right to adequate support in the jurisdiction of the father's domicile.[10] In a migratory divorce case the child cannot speak for itself; nor can the community which will ultimately shelter the child represent the interests either of that community or of the child. When a father fails to provide support, a court of his domicile which has the parties before it should be entitled to make a decree which will reflect the child's present needs, and the present situation of its parents, without regard to what the parents agreed upon at some earlier time and caused to be embodied in the decree of a foreign court.

I think the right to a prospectively enforceable domestic decree need not depend upon proving changed circumstances, any more than upon pleading them. Issues of res judicata and full faith and credit need not plague the disposition of such cases as this. An enforceable foreign decree for maintenance can exist side-by-side with an obligation under District law, enforceable against a defendant domiciled in the District, to provide for one's children.[11] The obligation to support under District law is separate and distinct from any similar obligation under the law of Florida or any other state, and should be separately enforceable. Cf. Industrial Comm. v. McCartin, 1947, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140. Such enforcement in no way trenches upon the validity, or the collectibility here, of maintenance awards decreed under foreign law. Nor does it involve relitigation of previously settled issues. The issues are different. The foreign decree can be sued on and will receive full faith and credit. Or the domestic obligation can be enforced. Double recovery for the same period of time should not—and of course need not—be permitted; otherwise, those entitled to support should be allowed to enforce the totality of their rights.[12]

Substantially this reasoning and approach were adopted by this court in Schneider v. Schneider, supra, where we held that the obligation under District of Columbia law to provide support "still exists in spite of the [foreign] decree",[13] though the validity of the decree was unchallenged. The ground of decision was the fact that the foreign court had no jurisdiction over the father's obligation to support the child.

9. Halvey v. Halvey, 1947, 330 U.S. 610, 613, 67 S.Ct. 903, 91 L.Ed. 1133.

10. Cf. Yarborough v. Yarborough, 1933, 290 U.S. 202, 213, 54 S.Ct. 181, 78 L. Ed. 269; see also Sackler v. Sackler, supra; Goodman v. Goodman, supra.

11. "These obligations, as such, persist * * *. They do not merge into such an order or decree so as to lose their identity as primary obligations, in the sense that a debt becomes merged into a judgment. Because of the continuing nature of the obligations, orders and decrees for their liquidation and enforcement are of but temporary application. They do not create or even modify the obligations, but merely have to do with their enforcement." Goodman v. Goodman, supra, 194 A. at page 869. See also Sackler v. Sackler, supra, 47 So.2d at page 294: "The mere transformation of an obligation to support into more specific form, such as a decree to pay, does not make it an ordinary debt but a continuing obligation."

12. The decision in Yarborough v. Yarborough, 1933, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269, is no barrier to such an approach. There, the court specifically left open the question of the power of a court in the jurisdiction of the father's domicile to make him provide fully and adequately for the support of his children, notwithstanding the terms of a foreign decree. 290 U.S. at page 213, 54 S.Ct. at page 185. Subsequent decisions leave little doubt that the Supreme Court will find that such power exists. Halvey v. Halvey, 1947, 330 U.S. 610, 615, 67 S.Ct. 903, 91 L.Ed. 1133; Industrial Comm. v. McCartin, 1947, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140.

13. 78 U.S.App.D.C. at page 385, 141 F.2d at page 544.

218

It could make an award fixing the measure of this obligation under its law. But it could not thereby cancel the obligation under District of Columbia law, or render it unenforceable here.

This court, by adopting the enlightened approach of the Schneider case, has power to provide adequate judicial remedies against men who fail to carry out their obligation to support their wives and families. We should use that power. But if, as in the present case, we fail to provide judicial relief, the community has no alternative but to apply to Congress for the necessary legislation.