GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff, *v.* EDWARD J. BARNETT and Others, Defendants.

Municipal Court of New York, Borough of Manhattan, Third District, December 14, 1931.

*John Thomas Smith* [*A. F. Power* of counsel], for the plaintiff.

*Charles Marks*, for the defendants Cohen, Chapman and Levine.

LEWIS, DAVID C., J. On the 4th day of March, 1931, Rupp Bros. Motor Sales Corporation, as vendor, and Edward J. Barnett, as vendee, executed a certain contract for the conditional sale of an automobile truck (motor number T 2182485). This contract called for a down payment of $243, with the balance of the purchase price to be liquidated in eleven successive monthly install-

ments of $45 each, followed by one monthly installment in the sum of $29, payable on the fourth day of each and every month commencing on the month next succeeding the date of the contract.

This contract is signed by Edward J. Barnett, and states his address as No. 7 Charles street, Oceanside, Long Island, N. Y.

In a written preliminary application for the purchase of said car the said Barnett likewise gives No. 7 Charles street, Oceanside, Long Island, N. Y., as his residence.

Upon the signing of the contract, the auto truck was delivered to Barnett at No. 7 Charles street, Oceanside, Nassau county, and Barnett then and there turned over a second-hand truck as a trade-in and part payment on said conditional sales contract.

The conditional sales contract was later assigned by Rupp Bros. to the plaintiff, and on the 16th day of March, 1931, the contract so assigned was filed in the office of the county clerk of Nassau county.

On the 23d day of April, 1931, the defendant William Cohen duly entered a judgment against the said Edward J. Barnett in the Municipal Court of the City of New York, Borough of Manhattan, Eighth District. Execution on this judgment was duly issued out of the said Municipal Court on the 20th day of May, 1931, and placed in the hands of Barnet Greenberg, a marshal of the city of New York.

This execution was returned to the office of the clerk of said district on the 1st day of August, 1931, indorsed " Unsatisfied, 8/1/31, B. Greenberg, Marshal."

A. second execution on the judgment entered on the said 23d day of April, 1931, was issued by the attorney for the said William Cohen to the same city marshal.

This second execution, bearing date the 31st day of July, 1931, was returned to the court indorsed: " Satisfied to plaintiff for $16.01 — unsatisfied for balance 8/12/31. B. Greenberg, City Marshal."

Under date of August fourth, on the stationery of the said Marshal Greenberg, a letter was addressed to Mr. Edward J. Barnett, stating as follows:

" I have this day levied on one Chevrolet truck, Motor number T 2182482, license 474653, same to be sold at public auction on August 10, 1931, at 9 A. M. subject to mortgage.

" Yours very truly,
" B. GREENBERG,
"*Marshal of the City of New York.*"

Upon the trial the plaintiff contested the validity of the second execution on the score that only one execution could be outstanding

at the same time. Counsel, however, acquiesced in the ruling of the court that this appeared to be, at the most, simply an irregularity and in itself would not be sufficient to invalidate or destroy the second execution. (See *Crouse* v. *Schoolcraft*, 51 App. Div. 160.)

Following the alleged levy made under the second execution, the marshal on the 10th day of August, 1931, purported to sell the said auto truck free and clear of this conditional sale contract, and it was bid in on said sale by the defendant Sidney Levine, who did so in behalf of and in protection of the interests of the defendant William Cohen.

On the 4th day of August, 1931, Barnett defaulted in the payment of the installment then falling due. Upon such default and non-payment and the subsequent failure of Barnett to duly perform the obligations of the contract of conditional sale this plaintiff instituted this action pursuant to the provisions of the Municipal Court Code of the city of New York for the foreclosure of a lien.

On the trial it developed that upon the attempts of the marshal to enforce the first execution, he was advised of an outstanding mortgage against the truck; thereupon he had an inquiry made, in consequence of which the first execution was returned wholly unsatisfied, and the second execution then came into being.

In the course of the attempted enforcement of his alleged rights as a judgment creditor armed with an execution, sixty-seven dollars was paid by Cohen to the garage keeper where Barnett had the truck, to release his garage keeper's lien; and this lien is now claimed by the defendant Cohen.

Storage charges in the sum of thirty dollars were also incurred by the marshal for garaging the truck with the defendant Chapman subsequent to the levy; and Chapman now asks the enforcement of this lien.

The defendants challenged the right of the plaintiff to prevail herein principally upon the ground that as against the defendant Cohen the conditional sale contract had become void and unenforcible.

If the defendant Cohen, as a judgment creditor of the conditional vendee, acquired a lien on the truck by execution and actual levy before the conditional sale contract was filed in the county required under section 66 of the Personal Property Law (added by Laws of 1922, chap. 642, as amd. by Laws of 1930, chap. 874), and without notice or knowledge of the conditional sale contract, the defense may prevail, otherwise it must fail.

If the filing of the contract with the clerk of the county of Nassau on the 16th day of March, 1931, was a sufficient compliance with

the law, then the claims of the defendants lose most, if not all, of their vitality.

Section 66 expressly requires that the conditional sale contract, or a copy thereof, be filed in the office of the clerk of the county in which the buyer *resides*. (Italics mine.)

In construing this section the court is mindful of the divers meanings attributable to the word " residence." The Legislature presumably knew and understood its legal significance as contrasted with the term " domicile." It was undoubtedly contemplated that the term " residence " was to be understood in the sense derived from its common usage and commonly attributed to it as a legal term.

There is abundant evidence aside from the recital in the conditional sales contract and in the written application in support of the contention that No. 7 Charles street, Oceanside, Long Island, N. Y., was the *actual physical abode of Barnett*. He had moved to this address upon the abandonment and surrender of his furnished room in New York county, where he had resided immediately prior thereto. And he had taken his personal effects direct to this address. He slept there and ate there except those meals consumed at a restaurant. Though it appeared that at some time after his removal to Nassau county, and while he continued his occupancy of his furnished room at that address, he had taken and to some extent outfitted a small apartment in Queens county, N. Y., the evidence did not establish that he had either expressly selected the Queens county address as his " residence," or by his conduct or physical occupancy and use of the Queens county rooms, had given to them the attributes of a residence.

In his application for the owner's automobile license for this truck Barnett swore to No. 7 Charles street, Oceanside, Long Island, as his residence; and the license so states.

In his business advertisement Barnett listed this Oceanside address together with the New York office address.

The general principle of law that " One's residence is in its inception essentially a matter of personal selection " (8 Cyc. 1106), gives added significance to these facts.

But then what are the essentials demanded to constitute a place one's residence within the meaning of this particular section of the Personal Property Law?

" Residence " is not a term of such narrow, restricted, technical and unbending import that its use in the wording of this statute conclusively commits the Legislature to a meaning confined to a strict interpretation of residence as a synonym for domicile or legal residence.

The courts have invariably distinguished "residence" from "domicile," particularly in connection with the construction of various statutory provisions.

So in the matter of section 182 of the Civil Practice Act we find: " The residence of a party, within the meaning of section 182 of the Civil Practice Act, requiring an action to be tried in the county wherein one of the parties resides, is not necessarily the permanent home or domicile of a party." (*Stoddard* v. *Manzella*, 207 App. Div. 519.)

And again, in applying section 1522 of the Civil Practice Act, the court differentiates between " residence " and " domicile." (*Monteiro* v. *St. Just S. S. Co.*, 123 Misc. 8.)

Likewise, in construing the law relating to succession either by will or testacy, the Court of Appeals rules: "As domicile and residence are usually in the same place, they are frequently used, even in our statutes, as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also intention to make it one's domicile.  *  *  *

" The subject is under the absolute control of every person of full age and sound mind who is free from restraint, unless it may be that the domicile of a wife is controlled by that of her husband as long as she lives with him. (Story's Conflict of Law [7th ed.], sec. 46.)  Subject to the qualifications named every human being may select and make his own domicile.  *  *  *  As we have seen, a person may select and make his own domicile and no one may let or hinder. He may elect between his winter and summer residence and make a domicile of either." (*Matter of Newcomb*, 192 N. Y. 238, at pp. 250, 251 and 252.) (See, also, *Matter of Macy*, 118 Misc. 875.)

So where the notice of sale upon the retaking of the property was sent to the address given by the purchaser in the contract of sale, the court interpreted the meaning of the word "residence" under section 79 of the Personal Property Law (added by Laws of 1922, chap. 642).

" Residence, as here used, means an abiding place or home, or a permanent address, where the buyer will be most likely to receive his mail. Under such a contract as this, he should notify the seller if he changes that address. It would be an unreasonable construction of the statute to hold that a seller must know what the

buyer's last place of residence is. Where the seller has no notice of a change of residence, the statute only requires that he send the notice to the last known residence. He must, of course, act in good faith. * * * *The burden of establishing a failure to comply with the statute should be on him who asserts it.*" (*Powell* v. *Credit Acceptance Corp.*, 131 Misc. 870.)

" ' Residence implies an established abode, fixed permanently for a time, for business or other purposes, although there may be an intent in the future at some time or another to return to the original domicile.' (*Morgan* v. *Nunes*, 54 Miss. 308.) ' Residence ' is the favorite term employed in statutes to express the connection between person and place; its exact significance being left to construction, to be determined from the context, and the apparent object sought to be attained." (*Cincinnati, H. & D. R. R. Co.* v. *Ives*, 3 N. Y. Supp. 895, at p. 896.)

The conditional vendor and its assignee (this plaintiff) were led to believe that Nassau county was the residence of the conditional vendee, not only as the intended result of his words, but as the logical conclusion of his acts.

" If he was misled and being misled, he should not be held to have forfeited his lien under the contract." (*Matter of Franklin*, 151 Fed. 642, at p. 645.)

" The mortgage having been made in Iowa, properly acknowledged there, and placed of record in the county where the property was actually situated, and in the possession of the mortgagor, it is incumbent upon those attacking the validity of such record to establish its validity by competent evidence, and that they had no notice of the mortgage." (*Matter of Brannock*, 131 Fed. 819, at p. 822.)

If the defendants would destroy or successfully impair the sufficiency of the Nassau county filing, they have the burden of establishing their contention.

When the contract was made, Barnett, the conditional vendee, had expressly chosen and designated No. 7 Charles street, Oceanside, Long Island, N. Y., as his residence; and by his conduct had confirmed that election. And there is neither necessity nor reason to now hold contrariwise.

Aside, however, from this question of " residence," a party who attacks the validity of a conditional sales contract must bring himself within the class provided by the statute. He must establish not only the judgment and the actual levy upon the personal property, but unless he shows that these steps were taken by him without any notice of the conditional sale contract they cannot avail him.

If he had knowledge of the conditional sale contract, the omission to file it is immaterial; and the contract withstands any assault. (*Tompkins* v. *Fonda Glove Lining Co.*, 188 N. Y. 261; *Kommel* v. *Herb-Gner Construction Co., Inc.*, 228 App. Div. 96.)

The contract surviving as a valid and subsisting obligation, what, if any, rights could any of the defendants procure superior to the title of this plaintiff?

In this connection, one may well take his cue from the studied caution of our highest court. " It has been held that the positive terms of the statute require the courts to apply the statutory rule though it defeats a title otherwise valid. (*Thayer Mer. Co.* v. *First National Bank of Milltown*, 98 N. J. Law, 29; affd., 98 N. J. Law, 907.) *We need not now decide whether, when the question is presented to us, we shall reach a similar conclusion.*" (Italics mine.) (*Goetschius* v. *Brightman*, 245 N. Y. 186, at p. 193.)

The defendants also attack the transaction as one likely to permit, if not to produce, fraud upon the unsuspecting creditors of the vendee; and on this basis impugn its integrity.

This mode of commercial engagement, so common to our present-day life, is in no wise modern. It is not a modern creation of the business world. It is of ancient origin and of unquestioned legality. Neither statute nor decision has sought to outlaw it. It does not remain for this court to taint it. Installment sales have become an American institution.

The propriety of this system of business financing needs no championship by this court. It can boast of the most eminent sanction.

" Through various discount companies we have established the mobility for the sale of automobiles, radio sets and fur coats on the installment plan, where 20 or 25% cash are gratefully accepted." (See the address of the Hon. Herbert Hoover, President of the United States, at Washington, D. C., on December 2, 1931, before the meeting of the President's conference on Home Building and Home Ownership.)

The nature and character of such transactions has been repeatedly defined. The title and rights of the conditional vendor have been repeatedly defended; they are well grounded in common law and statute.

" Under a conditional sale contract, at *common law*, no title passed to the buyer until the contract price had been paid. Consequently, *neither an execution issued against the property of the buyer, nor a levy thereunder, gave rise to a lien upon the chattel sold.* (*Herring* v. *Hoppock*, 15 N. Y. 409; *Hasbrouck* v. *Lounsbury*, 26 N. Y. 598; *Ballard* v. *Burgett*, 40 N. Y. 314; *Cole* v. *Mann*, 62 N. Y. 1;

*Goetschius* v. *Brightman*, 245 N. Y. 186.) The common-law rule, with exceptions stated, has been declared by statute." (*Baker* v. *Hull*, 250 N. Y. 484, at p. 486.) (Italics mine.)

"*At common law, in this state* as in California, the title of a seller under a contract of conditional sale could be *enforced as against all the world.* For the protection of subsequent purchasers, the Legislature has enacted that conditions or reservations in such a contract are void against subsequent purchasers unless the contract is filed. *Common-law rights still exist here, except as modified by statute. Not only is the conditional vendor protected in his title to the property, but it is apparent that the conditional vendee possessed no interest subject to levy upon an execution.*

" The special agreement under which the safe was delivered by the plaintiff to Brooks & Hopkins was nothing more than an executory contract of sale, to be completed on the payment, at its maturity of the note for $235, given for the stipulated price of the safe. * * * Brooks & Hopkins had not such an interest in the property as was the subject of a levy and sale on execution. *No property could vest in them under the contract until the payment of the price of the safe. It remained in their possession as the property of the plaintiff. Their implied right to its use, until the maturity of the note, was not such an interest as could be levied upon; their possession until that time was as the mere bailee or servant of the plaintiff.*" (*Herring* v. *Hoppeck*, 15 N. Y. 409.) (Italics mine.)

" The law seems to be settled that the interest of a vendee in property sold under a conditional sale agreement *is not subject to levy and sale on execution issued on a judgment against him.*" (*Whitney* v. *Biggs*, 92 Misc. 424, at p. 432.) (Italics mine.)

In the Municipal Court of the City of New York a conditional vendor is restricted to an action to foreclose a lien — as contrasted with the replevin action available in other courts. (New York City Mun. Ct. Code, §§ 70, 73.)

But these provisions were enacted merely to control the remedy available to a conditional vendor in our court. They do not pretend to construe his rights.

" The remedy of replevin constitutes the legal process contemplated by section 76 of the Personal Property Law (as added by Laws of 1922, chap. 642) and is thus available when the goods cannot be retaken without breach of the peace. But in the instant case, they were retaken by writ of seizure, which is appropriate only in the Municipal Court when it is sought to obtain possession of chattels upon default under a *conditional sales* contract (Municipal Court Code, § 71); foreclosure of a lien in that forum under such a contract being the sole authorized remedy. (*Mathushek & Sons*

*Piano Co.* v. *Weld,* 94 Misc. 282.) As, however, such an anomalous procedure is evidently not permitted in the City Court, it follows that the writ of seizure obtained here was void and, therefore, properly vacated." (*Grossman* v. *Weiss,* 129 Misc. 234, at p. 235.) (See, also, *Quattrone* v. *Simon,* 85 id. 357; *Crump* v. *Wissner,* 163 App. Div. 47.)

Failing to destroy the plaintiff's rights as a conditional vendor, the conclusion, therefore, is inevitable that the defendants could in no way impair or defeat them by seizing the property under an execution on a judgment rendered against the conditional vendee.

And if the property could not be seized by execution, what power was there either in the city marshal, or Barnett's judgment creditor, Cohen, to subject it to a lien?

And if neither the judgment creditor, Cohen, nor his city marshal could impress a lien upon the property, no garage keeper could claim one through them. For how could he get what they could not give?

Then again any lien enforcible by the garage keeper upon an automobile stored with him, by or with the consent of the conditional vendor or conditional vendee, cannot be transferred or assigned by the garage keeper to a third party.

The life of the garage keeper's lien depends upon his possession of the personal property; and when the property finally passes out of his possession the lien passes out of existence.

" The lien given by the statute cannot be separated from the right to possession of the article on which the lien exists, and since it is clear that the garage keeper could not assign to any other person his right as bailee, and since his only right to possession was created by and existed under the contract of bailment, it follows that the lien could not be assigned." (*Koroleff* v. *Schildkraut,* 179 N. Y. Supp. 117, at p. 119.)

During the trial it was contended that the vendee had abandoned his Nassau county residence; and that the plaintiff had thereupon failed to refile the conditional sales contract, as required by the statute. (See Pers. Prop. Law, § 71, added by Laws of 1922, chap. 642, as amd. by Laws of 1926, chap. 160.) However, in this respect, the defendant failed to sustain its attack. For it is apparent that the plaintiff filed the contract within the ten days prescribed by section 71 of the Personal Property Law.

Judgment is, therefore, rendered in favor of the plaintiff against the defendants and the counterclaims are dismissed.

Settle judgment on two days' notice.