ELIZABETH KEMP, Petitioner, *v.* JOSEPH S. G. KEMP, Respondent.

Domestic Relations Court of New York, Family Court, New York County, November 29, 1939.

*William C. Chanler, Corporation Counsel [Alice E. Trubin* of counsel], for the petitioner.

*Edward J. Gould* for the respondent.

SICHER, J.   On January 5, 1939, there was entered an order of this court directing the respondent husband to pay the weekly sum of thirty-five dollars for the support of petitioner wife.

Respondent complied with that order until recently advised by new counsel to disregard it. It is conceded that the consequent arrears aggregated $105 already on November 10, 1939, and that the default is deliberate and without excuse save for the legal objections tendered.

Those objections consist of a contention that the petition herein should be dismissed and the aforementioned January 5, 1939, order be vacated, upon grounds phrased in respondent's brief as follows:

" (1) This tribunal lacks jurisdiction in the premises.

" (2) The proof is overwhelming that there is no imminent danger that the petitioner will become a public charge."

Neither of those stated grounds is sound. The first of them is contrary to the actual facts and the law; and the second is immaterial as a matter of law.

Upon the November 10, 1939, hearing I indicated that as no appeal had been taken from that January 5, 1939, order, and the time to appeal therefrom had expired, it was binding on both parties and me in the absence of any proof of subsequent change of circumstances.

Respondent's present counsel did not participate in the January 5, 1939, hearing, having been retained only recently. But Associate Assistant Corporation Counsel Trubin had represented petitioner also at that time, and, because of her recollection of what had then transpired, objected to questions designed to review the issues considered and determined upon the January 5, 1939, hearing, urging the impropriety of respondent's indirectly seeking in effect a rehearing of matters adjudicated by the aforementioned January 5, 1939, order after expiration of the time for appeal therefrom.

In deference to respondent's counsel's earnest insistence that such order was a nullity, for lack of jurisdiction of the subject-matter, I allowed certain testimony provisionally, subject to its being stricken out after my reading the minutes of the January 5, 1939, hearing, which respondent's counsel offered to furnish and has since furnished.

A reading of those minutes confirms the associate assistant corporation counsel's recollection, and also my own impression that the only change of circumstances since the January 5, 1939, hearing is the substitution of zealous new counsel for respondent.

Obviously, any objection to the jurisdiction must be solely one of lack of subject-matter. For, a notice of general appearance in respondent's behalf was filed on November 23, 1938, and a like notice by superseding attorneys on December 15, 1938, and respondent himself testified at the January 5, 1939, hearing under question-

ing of his own counsel. Moreover, on July 26, 1939, respondent successfully opposed petitioner's application for an increase in the amount of the January 5, 1939, order, a continuance of which was that day directed after both sides had been heard. And, as above remarked, respondent thereafter complied with such continued order until recently advised to ignore it.

I have personally examined the many authorities cited in the brief submitted by respondent's counsel and find that, with the exception of *Matter of Condaras* v. *Condaras* (252 App. Div. 871) and *Matter of Costa* v. *Costa* (247 id. 192), all of them relate to prior statutes which are no longer in force and have no bearing upon the residential jurisdiction and powers of Domestic Relations Court of the City of New York. True, this is a statutory court, and its jurisdiction is, therefore, limited and circumscribed by the statute which created it and confers and defines its powers. But this court is enabled to act to the full extent of such statutory grant, and the powers expressly conferred upon it, as a civil tribunal, are not to be narrowed by resort to decisions under criminal statutes since outmoded or repealed.

The Domestic Relations Court of the City of New York was created by chapter 482 of the Laws of 1933 (known as the "Domestic Relations Court Act of the City of New York"). By that enactment the then Children's Court of the City of New York, which had been constituted a separate statutory court on September 15, 1924, was renamed "Domestic Relations Court of the City of New York" and its functions were extended and its jurisdiction enlarged by merging into it, as a co-ordinate branch, the Family Court which had previously been a part of the criminal courts system of the city of New York.

Section 161 of Domestic Relations Court Act provides: "All laws and parts of laws, whether general, local or special, which are inconsistent with or in conflict with or repugnant to any provision of this act shall be deemed not to apply."

And in *Matter of Kane* v. *Necci* (269 N. Y. 13) the New York Court of Appeals, construing the Domestic Relations Court Act of the City of New York, held that the Domestic Relations Court of the City of New York thereby created is a civil, not a criminal, court.

Accordingly, it is futile to cite and copiously quote from such decisions as *People* v. *Crouse* (86 App. Div. 352) (dealing with section 685 of the Greater New York Charter enacted in 1901 and since repealed) or *Bayne* v. *People* (14 Hun, 181) (involving chapter 395 of the Laws of 1871, which made it a crime for a husband to abandon his family within Kings county); and there is no validity to respondent's counsel's argument that "this proceeding is of a

criminal nature, and is not intended as a remedy for deserted wives, but as a protection for the city of New York against the expense of supporting paupers."

True, during the calendar year 1938 the Family Court Division of Domestic Relations Court of the City of New York collected upwards of $3,300,000 for the support of wives, children and " poor relatives," and a large part of such sum doubtless represents a saving to the taxpayers of the city of New York. But that is only one of its many functions in dealing with broken homes. Despite the disheartening handicap of gravely insufficient clerical, probation officer, and other essential, personnel, this court daily plays a more versatile role in the socialized treatment of family legal problems than merely the single part described by respondent's counsel as the " protection for the city of New York against the expense of supporting paupers." Indeed, the enumeration of the powers conferred on the Family Court Division specifically includes the power: " (1) To order support of a wife or child or both, *irrespective of whether either is likely to become a public charge,* as justice requires having due regard to the circumstances of the respective parties." (Italics supplied.) (Dom. Rel. Ct. Act, § 92, subd. 1.)

The restriction against entertaining a wife's petition for support unless it is shown to the satisfaction of the Family Court Division that the petitioner is likely to become a public charge applies only in a case where an action for divorce, separation or annulment is pending in the Supreme Court of the State of New York or there has been a final adjudication by the Supreme Court denying alimony in a separation action or there exists a formal agreement to separate. (Dom. Rel. Ct. Act, § 137. Cf. *Matter of Costa* v. *Costa, supra.*)

Thus, the very language of Domestic Relations Court Act of the City of New York is in itself the short and sufficient answer to the second of the above-quoted contentions of respondent's counsel.

Likewise, in the express provisions of that statute is contained the refutation of respondent's belated attack on the jurisdiction.

Section 103 of Domestic Relations Court Act reads:

" § 103. Residential jurisdiction. A husband or father may be required to furnish support or may be found guilty of non-support, as provided in the two proceding sections, *if, at the time of the filing of the petition for support,*

" (a) *he* is *residing or domiciled* in the city; *or*

" (b) he is not residing or domiciled in the city but is found therein at such time, provided that the petitioner is so residing or domiciled at such time; *or*

" (c) he is neither residing nor domiciled nor found in the city but prior to such time and, while so residing or domiciled, he shall

have failed to furnish such support or shall have abandoned his wife or child and thereafter shall have failed to furnish such support, provided that the petitioner is so residing or domiciled at such time." (Italics supplied.)

Thus, residential jurisdiction may arise under any one of three alternative sets of circumstances, each of which is separately dealt with in respective subdivisions (a), (b) and (c) of section 103.

The particular facts do not bring the instant parties within either subdivision (b) or subdivision (c). For, at the time of the filing of the support petition herein petitioner was, and she still is resident and domiciled in the State of New Jersey.

However, these parties do come within the provisions of subdivision (a), for the reason that upon the date (October 27, 1938) of the filing of such petition respondent was residing in the city of New York; and, incidentally, he has continuously since then, and also had for two years previously, resided and been engaged in business within the city of New York.

The existence of such residential jurisdiction under subdivision (a) of section 103 is established by respondent's own testimony upon the January 5, 1939, hearing, namely:

Direct examination by Mr. Fisher: " Q. Where do you live? A. 59 Pineapple Street, Brooklyn. * * * Q. Mr. Kemp, you are living in an apartment, are you? A. Yes. Q. And how much per month do you pay for that? A. $60. Q. And who lives with you? A. My son. Q. How old is he? A. Twenty-two. Q. Is he working? A. He is. Q. Is he self-supporting? A. Not quite. He makes $75 a month, I think. * * * Q. You say that your average cost of living is around $200 a month? A. That's about right. * * * Q. Do you do any of your own cooking? A. Occasionally; not very often. Q. Does your son contribute anything toward the expense of the apartment? A. Yes. Q. Have you any idea of how much? A. He pays half the rent. Q. And you pay all the other expenses in connection with that? A. That's right."

Cross-examination by Miss Trubin: " Q. Before you lived at 59 Pineapple Street, where did you live? A. I lived at 243 West End Avenue. Q. And how much did you pay rent there? A. $80. That was a furnished apartment. Q. In Pineapple Street you have your own furniture? A. I am buying some. Q. How much furniture did you buy in that apartment. A. A couple of hundred dollars worth. Q. Several hundred dollars? A. A couple of hundred dollars. Q. *How long have you been in Pineapple Street?* A. *Since last September; latter part of September.* (Italics supplied.)

Redirect examination by Mr. Fisher: " Q. Let me ask you this: have you ever given Mrs. Kemp your address *where you live in Brooklyn?* A. *No.* Q. Is there any reason for not doing that? A. Yes, I didn't want her to call me up or visit me where I was living." (Italics supplied.)

The petition was verified and filed on October 27, 1938.

Inasmuch as respondent was then maintaining a permanent abode for himself and son in the borough of Brooklyn, respondent was " residing " in the city of New York at the time of the filing of the petition, and the proceeding, therefore, comes squarely within the purview of subdivision (a) of section 103 of the statute.

In such a situation it is quite immaterial that petitioner is a non-resident of the city and State of New York or that the abandonment or non-support occurred outside the city of New York. The legislative purpose is clear that the Family Court Division of Domestic Relations Court of the City of New York should be a forum open to wives, wherever resident or domiciled, if at the time the wife invokes the aid of this court the husband has meanwhile established either a residence or a domicile within the city of New York. Otherwise, a husband, by establishing for himself a permanent abode and place of livelihood within the city of New York and remaining away from the jurisdiction where the wife resides or is domiciled or the abandonment occurred, might devise immunity and strip her of remedy. For, in such kind of situations an action for separation could not be maintained in the Supreme Court of the State of New York for want of the jurisdictional conditions specified in section 1162 of the Civil Practice Act.

It is also immaterial whether or not respondent regarded Allendale, N. J., as his domicile on October 27, 1938, and perhaps still so regards it. Into section 103 are woven the words " residing or domiciled," not merely either the single word " residing " or the single word " domiciled " alone. If only the word " residing " had been used, it might have been arguable that the Legislature thereby intended " domiciled " (Cf. *Rawstorne* v. *Maguire,* 265 N. Y. 204), because " the words ' residence ' and ' domicile ' when used in a statute may have an identical or a variable meaning depending ' upon the nature of the subject-matter of the statute as well as the context in which the words are used.' " (*Perkins* v. *Guaranty Trust Co.,* 274 N. Y. 250, 259.) Thus, in probate matters the term " residence " is commonly interpreted as signifying " domicile." (See *Matter of Curtiss,* 140 Misc. 185, 188.) On the other hand, for purposes of venue (under section 182 of the Civil Practice Act), and for requiring a non-resident plaintiff to give security for costs (under section 1522 of Civil Practice Act), and in determining

the place of filing a conditional sale contract (under section 66 of Personal Property Law), the statutory term " residence " is in each instance construed in its popular sense and not as meaning " domicile." (See *General Motors Acceptance Corporation* v. *Barnett*, 142 Misc. 192, 195, 197.) And it is familiar doctrine that " a person may have two places of residence, as in the city and country, but only one domicile. * * * Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile." (*Matter of Newcomb*, 192 N. Y. 238, 250.)

Effect must, therefore, be given to the fact that in framing section 103 of Domestic Relations Court Act the Legislature was careful to resolve any possible doubt by using the combination of words " residing or domiciled," not as synonyms — for that would be mere redundancy — but as mutually exclusive and as expressing the well-settled distinction between " residence " and " domicile " defined in *Matter of Newcomb* (*supra*). And that legislative purpose is further indicated by the fact that in subdivision (c) of section 103 the language is: " neither residing nor domiciled nor found in the city." That is, the Legislature there contemplated and covered three classes of situations, such as: (1) The case of a respondent who resides elsewhere but still maintains his New York city domicile (*e. g.*, a native New Yorker living in Paris, France, while employed at the Paris branch of a New York city bank or trust company); (2) the case of a respondent having an apartment, and perhaps also a business office, in the city of New York but, for tax purposes, maintaining another home and a domicile in New Jersey or Connecticut; or (3) the case of a respondent both residing and domiciled outside the city of New York but commuting there regularly to a place of employment or at least making occasional visits to the city of New York.

Accordingly, it is inconsequential that after answering " 59 Pineapple Street, Brooklyn," in response to his counsel's question " Where do you live," respondent next answered " Allendale, New Jersey," in response to his counsel's further question " Where is your legal residence?" That such last-mentioned question and answer involved the statement of a legal conclusion and indicated " domicile " at Allendale, N. J., rather than " residence " in the sense of a continuous abode in the city of New York, is manifest not only from the testimony already quoted but from the following additional testimony of respondent upon the January 5, 1939, hearing:

Direct examination by Mr. Fisher: " Q. Where do you live? A. 59 Pineapple Street, Brooklyn. * * * Q. Where is your

legal residence? A. Allendale, New Jersey. Q. Do you own a home there? A. I do. Q. Did you live there with your wife up to September, in 1936? A. I did. Q. What was the approximate date? A. October 14, 1936. Q. And *did you leave at that time?* A. *I did.* Q. What was the occasion for your leaving? A. The quarrel over money. Q. Had that been a persistent quarrel? A. For two years or more; persistent quarrel. Q. Before you left who had been living in that home beside you and Mrs. Kemp; anyone? A. My three children." (Italics supplied.)

Furthermore, under cross-examination as to the itemization of certain unpaid bills owing by respondent on January 5, 1939, there occurred the following colloquy: " Q. Is that to your home on Pineapple Street? A. No. To Mrs. Kemp. These are all Mrs. Kemp's bills. Q. What else? A. There is a $40 balance on an oil unit. Q. Is that in the house? A. Yes. Q. That is not Mrs. Kemp's bill; part of your expenses of the house? A. *I haven't lived there.*" (Italics supplied.)

Besides, if there were ever any question of fact as to whether or not respondent was residing in the city of New York at the time of the filing of the petition, that issue was, at least by necessary implication, litigated upon the January 5, 1939, hearing and conclusively adjudicated against respondent by the January 5, 1939, order.

In the light of the foregoing facts and principles of law, the January 5, 1939, order of this court had the requisite jurisdictional foundation.

Section 103 of Domestic Relations Court Act was previously construed by this court in *Young* v. *Young* (154 Misc. 713), in *Matter of Singer* v. *Singer* (163 id. 209) and in *Beringer* v. *Beringer* (164 id. 413). In *Young* v. *Young* (*supra*) and in *Beringer* v. *Beringer* (*supra*) Mr. Justice PANKEN granted motions to dismiss the petitions for lack of jurisdiction, and in *Matter of Singer* v. *Singer* (*supra*) Mr. Justice O'BRIEN denied such motion.

In both *Beringer* v. *Beringer* (*supra*) and *Young* v. *Young* (*supra*) it appeared that although the petitioner was a resident of the city of New York the respondent was a non-resident; that is to say, Mr. Justice PANKEN had for consideration only the question of the applicability of subdivision (b) or subdivision (c) to the particular facts presented and not a set of facts calling for interpretation of subdivision (a). Indeed, the opinion in *Young* v. *Young* (*supra*) expressly states: " Subdivision (a) of that section does not apply."

On the other hand, in *Matter of Singer* v. *Singer* (*supra*) Mr. Justice O'BRIEN had before him a case coming within subdivision (a), and he, therefore, held that the non-residence of the petitioner

did not bar her right to apply for support from respondent in the Domestic Relations Court of the City of New York in view of the fact that at the time of the filing of the petition the respondent-husband had become a resident of the city of New York.

The language of the memorandum opinion in *Matter of Condaras* v. *Condaras (supra)*, if superficially read apart from the background of the actual facts, might seem to sustain the contention that this court lacks jurisdiction unless it is shown that the husband was residing or domiciled in the city of New York at the time of the abandonment or failure to support. Nevertheless, an examination of the record on appeal and briefs shows that the language of the opinion was addressed solely to a situation arising under subdivision (c) of section 103 and that there was no consideration of subdivision (a) nor any adjudication in respect of its meaning or application.

In *Matter of Condaras* v. *Condaras (supra)* the husband-respondent appeared specially for the purpose of moving to vacate a warrant which had issued, but not been served, against him as a resident of Pennsylvania upon the filing of a petition for support by a wife residing in Staten Island.

The petition contained no allegation concerning the husband's residence. But the petitioner's testimony showed that on February 17, 1933, the parties had entered into a formal separation agreement, that thereupon the husband returned to Pennsylvania where he had resided and operated a business before the marriage, that the husband had been complying with the provisions of that separation agreement but that the wife, deeming inadequate the provisions thereof for herself and child, had filed a petition in the Family Court Division, Richmond County. Upon those facts, the Appellate Division ruled that the Family Court Division lacked jurisdiction to issue a warrant, inasmuch as the husband-respondent at the time of the filing of the petition was neither residing nor domiciled within the city of New York nor had he failed to furnish support or abandoned his wife and child while so residing or domiciled. But such decision, dealing with a husband residing and domiciled in the State of Pennsylvania, did not in the remotest sense touch upon subdivision (a) of section 103, which covers the wholly different factual situation of a respondent residing or domiciled within the city of New York.

For the foregoing reasons respondent's objection to the jurisdiction is hereby overruled, the aforementioned January 5, 1939, order is hereby again continued until further order of this court, the arrears thereunder are hereby fixed at $105 as at November 10, 1939, and respondent is hereby directed to pay into this court

on or before December 8, 1939, the full amount of those arrears and also any additional weekly $35 sums which will have become due between November 10, 1939, and December 8, 1939.

During the interval between the November 10, 1939, hearing and the filing of this opinion respondent served formal notice of motion, returnable before me on November 21, 1939, praying for an order, pursuant to subdivision 16 of section 92 of Domestic Relations Court Act, vacating the aforementioned January 5, 1939, order of this court.

In support of such motion there have been filed respondent Joseph S. G. Kemp's affidavit verified November 16, 1939, and his supplemental affidavit verified November 20, 1939. And in opposition there have been filed the affidavits of Alice E. Trubin, respectively verified November 20, 1939, and November 24, 1939, of petitioner Elizabeth Kemp, verified November 21, 1939, the minutes of the January 5, 1939, hearing before Justice CHARLES BRANDT, JR., the November 24, 1939, affidavit of Justice JOSEPH F. MAGUIRE, the November 24, 1939, affidavit of now retired Justice CHARLES BRANDT, JR., and the November 24, 1939, affidavit of shorthand stenographer Philip Brody.

Such notice of motion and the supporting affidavits are largely repetitious of the objections raised at the November 10, 1939, hearing and embodied in the brief of respondent's counsel, and were apparently designed for purposes of atmosphere and in furtherance of the unwarranted attempt thereby to obtain a review of Judge BRANDT's January 5, 1939, order by another justice of this court after expiry of the time to appeal therefrom to the Appellate Division.

For, except in the immaterial respects next discussed, the moving papers present no contentions not already raised upon the November 10, 1939, hearing or in the brief for respondent submitted at that time.

One of those immaterial additional phases is the averment that the petitioner " refuses to live with " respondent " in an apartment in New York City." Such claim is in square contradiction to respondent's January 5, 1939, testimony that he had not given to Mrs. Kemp his Brooklyn address because he did not want her even to call him up or visit him. But assuming a change of heart on respondent's part, nevertheless the present offer of reconciliation (if such it be) cannot negative the concession of respondent's then counsel, upon the January 5, 1939, hearing, that " the petitioner is entitled to an allowance and providing the place of abode " and that the sole issue was one of amount. Nor can such belated proposal override and undo the January 5, 1939,

adjudication of this court that petitioner is entitled to separate maintenance. Any offer to take petitioner back, at this late stage and under the existing circumstances, is not redolent of good faith but rather comes within the category of " offers to return, not spontaneous or conciliatory in their character, but made under the advice of counsel as a part of the strategy of a law suit." (*Bohmert* v. *Bohmert*, 241 N. Y. 446, 453.) Nor would such tardy tender constitute a defense even to a criminal prosecution for abandonment. (*People* v. *Paaschen*, 105 Misc. 417; *People* v. *Romaine*, 57 id. 571.)

Equally unsound is respondent's correlative averment that " the minutes of the January 5, 1939, hearing contain no semblance of any evidence that I [respondent] abandoned my wife." Orderly procedure precludes me from any reconsideration of an issue which was embraced in and adjudicated by the aforementioned January 5, 1939, order, from which no appeal was taken and which was obeyed by respondent until otherwise recently advised by new counsel. So, the question raised by such counsel is no longer open. But if it were, as it is not, before me for determination, my reading of January 5, 1939, minutes would lead me to the same conclusion as the justice who heard the evidence and made that order.

Especially without merit and regrettable is the attempt, in respondent's supplemental affidavit, to capitalize the obviously inadvertent error of the temporary stenographer who took the minutes of the January 5, 1939, hearing before Mr. Justice CHARLES BRANDT, JR., but who mistakenly named in the transcript Mr. Justice JOSEPH F. MAGUIRE as the presiding judge. This mechanical slip of a substitute stenographer could readily have been corrected by proper inquiry on the part of respondent's counsel before his making the extraordinary and baseless assertion that the January 5, 1939, hearing had been conducted by one justice but the decision thereon rendered that same day by another justice. For, of course, the actual and readily ascertainable fact is that Mr. Justice CHARLES BRANDT, JR., both presided at the January 5, 1939, Family Court Division hearing, on Fifty-seventh street, and rendered the decision thereon and entered the aforementioned January 5, 1939, order and that Mr. Justice JOSEPH F. MAGUIRE was sitting all that day in the Manhattan Children's Court Division, on Twenty-second street, and heard no Family Court cases whatever. This true situation abundantly appears from the aforementioned affidavits of Justices JOSEPH F. MAGUIRE and CHARLES BRANDT, JR., and the November 24, 1939, affidavit of the shorthand stenographer who took down and transcribed the minutes of the January 5, 1939, hearing and who in his affidavit admits the inadvertent error of

his naming in the transcript Mr. JOSEPH F. MAGUIRE as the presiding judge instead of Mr. Justice CHARLES BRANDT, JR. Such transcript is, therefore, hereby corrected accordingly, so as to conform to the foregoing actual facts.

As still one more frivolous point, respondent's supplemental affidavit avers that " a reading of the January 5, 1939, minutes shows that no question of jurisdiction was broached." True, the question was not expressly discussed upon the January 5, 1939, hearing; not improbably because respondent's then counsel had studied the law and satisfied himself that the point was spurious. For, it appears from the aforesaid November 24, 1939, affidavit of Alice E. Trubin that on the occasion of the entry of a temporary order on November 23, 1938, there occurred the following colloquy between the court and counsel: " The Court: Are you raising any jurisdictional questions, as to territory or otherwise, in this court, at this time? Counsel for respondent: I am not raising it as a defense to the petitioner, I am only raising it as an aid to the court. I know that under your statute, if he has his domicile here, or a business address, that he comes practically under the statute. The Court: I am only trying to find out what the issues are now; then we can come to the testimony, to the factual phases later. Was there any issue raised as to the jurisdiction of the person of this respondent? Counsel for respondent: No, sir. The Court: The question as I see it, then, is that this is his wife, the parties are practically before the Court, you claim he should pay more than he is paying, and his defense is that there should be some disposition of the property, which should be made before any further action is taken for support; is that right? Counsel for respondent: That is what appears. The Court: It says here, in a letter: ' I represent Joseph S. G. Kemp, who has been residing in New York City since October, 1936, and his wife, Elizabeth, who has appeared before Mrs. Fisher.' "

It is urged in behalf of petitioner that respondent is, therefore, in any event estopped from raising any question of jurisdiction at this late stage; and there may be basis for this argument on the theory that any such issue was necessarily embraced in and adjudicated by the aforementioned January 5, 1939, order. (Cf. *Davis* v. *Davis*, 305 U. S. 32.) And it is further urged that this court has jurisdiction of the subject-matter even if the residential jurisdiction were lacking, it being argued that the " subject-matter " is the power of this court to grant petitioner support in accordance with the means and earning capacity of respondent. I am not persuaded that such argument is sound; but it is unnecessary to explore and pass upon that phase, in view of my conclusion that as a matter of

fact and law there exists here the residential jurisdiction prescribed by subdivision (a) of section 103.

There remains only the question as to whether certain testimony provisionally admitted at the November 10, 1939, hearing should be stricken out on the ground that it deals with issues already adjudicated by the January 5, 1939, order. I find that such testimony is irrelevant and immaterial and consists of matter which is undisputed and is presented also in the moving and opposing affidavits upon the aforesaid motion under subdivision 16 of section 92, namely, the residence of petitioner in the State of New Jersey, the fact that the abandonment or failure to support occurred in New Jersey, and that petitioner was at the time of the filing of the petition, and still is, unlikely to become a public charge. Strictly, all such indicated testimony should, therefore, be stricken out, on the technical ground of irrelevance and immateriality and because it bears on no issue not already considered at the January 5, 1939, hearing and adjudicated by the aforementioned January 5, 1939, order. Accordingly, I have disregarded such provisional testimony as irrelevant and immaterial and as being repetitious of issues conclusively adjudicated by such January 5, 1939, order. However, let such innocuous testimony stand as a matter of record, in order that it may fully appear that respondent's present default is without legal excuse.

Respondent's counsel has intimated his intention to appeal if his contentions be overruled. To facilitate such appeal, the foregoing rulings are hereby summarized and restated in the following form, so as to constitute the order of this court, namely:

(1) There is hereby denied in all respects respondent's motion, made upon the November 10, 1939, hearing, to dismiss the petition herein, respondent's objection to the jurisdiction of this court is hereby overruled, and the January 5, 1939, order of this court, which was previously continued by further orders respectively entered July 26, 1939, and November 10, 1939, is hereby again continued until further order of this court;

(2) Upon reading and filing the notice of motion, dated November 16, 1939, and returnable November 21, 1939, respondent Joseph S. G. Kemp's affidavit verified November 16, 1939, and his supplemental affidavit verified November 20, 1939, all in support of respondent's motion for an order, under subdivision 16 of section 92 of Domestic Relations Court Act of the City of New York, vacating the January 5, 1939, order, and on reading and filing the affidavits of Alice E. Trubin, respectively verified November 20, 1939, and November 24, 1939, of petitioner Elizabeth Kemp, verified November 21, 1939, the minutes of the January 5, 1939, hearing before

Justice CHARLES BRANDT, JR., the November 24, 1939, affidavit of Justice JOSEPH F. MAGUIRE, the November 24, 1939, affidavit of now retired Justice CHARLES BRANDT, JR., and the November 24, 1939, affidavit of shorthand stenographer Philip Brody, all in opposition thereto, and after hearing Edward J. Gould, Esq., attorney for respondent, in support of such motion, and William C. Chanler, corporation counsel of the city of New York (Alice E. Trubin of counsel), attorney for petitioner, in opposition thereto, respondent's said motion to vacate said January 5, 1939, order is hereby in all respects denied;

(3) The arrears accrued under said January 5, 1939, order, as continued by further orders of this court respectively entered on July 26, 1939, and November 10, 1939, are hereby fixed at $105 as at November 10, 1939, and respondent is hereby directed to pay into this court on or before December 8, 1939, the full amount of those arrears and also any additional weekly $35 sums which will have become due between November 10, 1939, and December 8, 1939;

(4) The transcript of the minutes of the January 5, 1939, hearing is hereby corrected to show that such hearing was in actual fact conducted before Mr. Justice CHARLES BRANDT, JR., and not before Mr. Justice JOSEPH F. MAGUIRE as the justice presiding;

(5) Unless respondent will have meanwhile paid into this court the full amount of the arrears hereby fixed and also any further weekly $35 sums accrued up to December 8, 1939, under said January 5, 1939, order as continued, the parties, and their attorneys, are hereby directed to appear before me, or the other justice then presiding, as Part II of the Manhattan Family Court Division, at noon of December 12, 1939, for the purpose of determining the amount and other terms of the bond or undertaking for the support of petitioner to be required of respondent under sections 139 and 151 of Domestic Relations Court Act and for the further purpose of making such, if any, changes in the order entered today to enable petitioner to collect out of such bond or undertaking the full amount of any arrears which will have accrued and remained unpaid on December 12, 1939;

(6) Petitioner's counter-motion, upon the November 10, 1939, hearing, for a cash bond of $350 is hereby denied, with leave, however, to renew upon the December 12, 1939, adjourned date and without prejudice to petitioner's right to apply at that time for a bond or undertaking in a larger amount than $350.

Two copies of this opinion are being filed with the original and the clerk of this court is hereby directed to send one of those copies to the attorney for respondent and the other to the attorney for petitioner.