In the Matter of "MARY MORGAN", Petitioner, against "SAMUEL MORGAN", Respondent.

Children's Court, Westchester County, August 30, 1946.

*Mortimer L. Rabson* for petitioner.

*Chauncey T. Fish* for respondent.

Smyth, J. On or about October 15, 1940, petitioner entered into a separation agreement with the respondent, her husband, wherein it was agreed that he would pay to her the sum of $20 per week for the support and maintenance of their minor son, then five and a half years of age. In April, 1941, petitioner secured a decree of divorce in Florida, and the maintenance provisions of said agreement were incorporated in the decree. The custody of the child was awarded to the wife. Subsequently she took up residence in Connecticut with her son and they have resided there continuously for more than three years prior to the filing of the petition herein. The respondent, at the time the petition was filed, was a resident of Westchester County. The petitioner alleges that respondent's income has increased considerably since the maintenance agreement was executed, and prays that respondent be directed to pay an amount for the support of the child, " as justice requires having due regard to the circumstances of the respective parties." (Children's Court Act, § 30-a, subd. 1, L. 1922, ch. 547, as amd.)

The first question to be determined relates to the jurisdiction of the court, respondent contending that the court does not have jurisdiction to compel the support of a minor child, who is not, and has not been for at least three years past, a resident of the State of New York.

The subject was considered in the Domestic Relations Court of the City of New York in *Kemp* v. *Kemp* (172 Misc. 738), *Weil* v. *Weil* (26 N. Y. S. 2d 467), " *Dominico* " v. " *Dominico* " (57 N. Y. S. 2d 79) and " *Almandares* " v. " *Almandares* " (186 Misc. 667) under a statute practically identical in its provisions with the Children's Court Act of the State of New York, and in each case the court concluded that nonresidence of the petitioner was not a bar to the proceeding, where the husband or father was domiciled within the city. I agree with the conclusions there reached. The child must be a resident, if the father's being found in the county or his having abandoned the child and having thereafter failed to provide support are relied upon pursuant to section 31-b, subdivisions (b) or (c), but not if residence or domicile of the father within the county is relied upon pursuant to subdivision (a).

It is contended in the instant case however, that subdivision 4 of section 31 of the Children's Court Act (which was amended by chapter 849 of the Laws of 1945) requires an opposite ruling, and as that point was not expressly discussed in the above-mentioned cases, it should be determined. Said subdivision provides that " The parents, step-parents or grandparents of a dependent minor, who has been a resident of the county at any time during the twelve months preceding the filing of the petition for his support, and who is unable to maintain himself and is likely to become a public charge, are hereby declared to be severally chargeable with the support of such minor. The court shall determine and apportion the amount that each such person shall be required to contribute, as may be just and appropriate in view of the circumstances of the case and their respective means."

It is contended that the provisions of this subdivision, permitting a minor to sue provided he has been a resident of the county at any time during the twelve months preceding the filing of the petition, and provided he is likely to become a public charge, by inference at least, exclude all other nonresident minors.

I do not so construe the subdivision. In my opinion it has an entirely different purpose. Section 31 establishes and declares the liability of relatives for the support of minors; subdivisions 1, 2 and 3, declare the father primarily liable, the mother secondarily liable, and the grandparents tertiarily liable, and they may be proceeded against in that order, provided the liability of those who precede each of them in the order of liability, cannot be enforced effectively. Under subdivision 4 however

where there is a dependent minor who is likely to become a public charge, all may be proceeded against collectively and the court may determine and apportion the amount which each such person shall be required to contribute, the purpose evidently being to prevent a child's becoming a charge upon the municipality. Matters respecting residence or domicile as related to jurisdiction are covered by section 31-b. I conclude therefore, that the court has jurisdiction in this proceeding.

The court has power to increase the amount agreed upon by the parents, and specified in the Florida decree for the support of the child. In *Stone* v. *Stone* (44 N. Y. S. 2d 558) and *Mallina* v. *Mallina* (167 Misc. 343) it was held that the Domestic Relations Court of the City of New York had jurisdiction to entertain proceedings to secure support for infants at a weekly rate in excess of the amount mentioned in the maintenance agreement incorporated in the foreign decree. In those cases the infants were residents of the city of New York, but in my opinion the same rule should prevail in favor of children not residing or domiciled within the county, to whom the Legislature has opened the doors of our courts by reason of the father's residence or domicile within the county.

Should the respondent be required to pay an amount in excess of $20 per week for the support of his son and if so, how much? The amount awarded should be such as justice requires having due regard to the circumstances of the respective parties and irrespective of whether the child is likely to become a public charge. (Children's Court Act, § 30-a.) The amendment of the Children's Court Act by chapter 810 of the Laws of 1942 and chapter 849 of the Laws of 1945 conferred upon the court these broad powers to provide adequate support for children. In *Garlock* v. *Garlock* (279 N. Y. 337) it was held that the obligation to support in accordance with the husband's means arises out of the combined marital and parental relations, and this obligation imposed by law cannot be contracted away. "This works both ways" continues the opinion (p. 340). "When he is prosperous, they prosper; when financial misfortune befalls him, the wife and family are also obligated to receive less. The duty of the husband, however, as matter of policy and as an obligation imposed by law, cannot be contracted away."

In the instant case the provision for the infant is substantial and was carefully arrived at. The separation agreement recites that it has been voluntarily entered into by the wife and husband without compulsion by either as against the other, and the wife has acted on the advice and counsel of her attorney, and

the husband has acted on the advice and counsel of his attorney. It further recites that "it is the judgment of each of the said parties hereto that the following agreement constitutes a fair and reasonable adjustment of the problems facing them and is in their best interest respectively, and in the best interest of the said child." It is reasonable to assume that the parties, being well advised by counsel, must have contemplated that the husband's financial circumstances might improve, yet no provision was made to increase the amount in such event. The agreement gives ample evidence of the father's continuing concern for his child. In the event of the death of the wife, the custody of the child is to revert to the husband. He is to make the child the beneficiary to the extent of one third of any insurance on his life "now in existence or hereafter to come into existence", a valuable right. He testified that he spends $1,000 per year for insurance premiums. He is to have the right to be consulted by the wife as to any and all major matters affecting the care, health, education and well-being of the child, and to see and visit with the child, at reasonable times, places and intervals. "The notice, the times, places and intervals at which the husband shall be permitted and aided by the wife, in seeing, visiting with, and taking the child, shall be liberally construed to the end that the relationship of father and son may develop as well as may be, without interference." It is further provided that the husband shall have the right to take the child with him for a continuous period of *at least* two weeks during the year, and for such other shorter periods from time to time as shall be consistent with the reasonable convenience of the wife and the interests of the child. It appears however, that this privilege was exercised only in the summer of 1945, for two weeks, although the mother would have no objection to the child's spending the summer with the father, and the latter would be delighted to have him.

Counsel stated that at the time the separation agreement was executed respondent's income was $5,000 per year. Respondent testified that his income became $8,000 per year and has been increased gradually, and that since July, 1944, he has been receiving $15,000 per year. He has remarried and has a daughter three and a half years of age. He gave an estimate of minimum living costs, including income taxes and care of his invalid mother, but excluding rent for ten months of the year. His estimates were modest and there must be an allowance for rent. He paid a certain medical bill incurred for his son over and above the weekly allowance. The wife testified that she has from time to time asked him to participate in paying some other

bills and that he has failed to do so. The amount of the bills is not given nor does it appear that the husband was in a position to respond at the time. On the other hand the respondent testified that he recalls only the single request for payment of a bill.

Meanwhile as the father's financial condition has improved, the child's circumstances appear to have deteriorated, and the father has taken no affirmative or responsive steps to improve the situation. The mother testified that she was gainfully employed in 1942, 1943, 1944 and part of 1945. Since August, 1945, her earnings have been comparatively small, due apparently to the closing down of war industries. Since the divorce she has lived with her mother and child and has paid the former $15 per week for room and board of the child. Originally they lived in a home which the maternal grandmother owned in White Plains. That was sold and they went to live in another house which she owned in Connecticut. That also was sold and at the time of the trial they were living in a summer cottage owned by the grandmother. She owns no other real property and after the summer vacation it will be necessary to seek living quarters. The grandmother is very ill and should not be left alone, and is living off her modest capital. Apparently these two, the mother and grandmother were willing to do for the boy while they could, but their circumstances have grown steadily less favorable and the mother now seeks further help from the father. Ordinarily the court would be loath to disturb an agreement entered into with such deliberation and care, but when the welfare of the child requires such action, the court is justified in disregarding the agreement. On consideration of all the circumstances it is my opinion that the boy cannot be supported on $20 per week in the manner in which his father's son should be supported. An award will be made in the sum of $30 per week commencing as of the date of the trial June 11, 1946.

Submit order.